IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ACRYLICON USA, LLC
a Delaware limited liability company,

    Plaintiff,

     v.

SILIKAL GMBH
a foreign company,

    Defendant.

CIVIL ACTION FILE
NO. 1:14-CV-1072-TWT

**OPINION AND ORDER**

This is an action for misappropriation of trade secrets and breach of contract. It is before the Court on the Plaintiff's Motion for Sanctions Pursuant to 28 U.S.C. § 1927 [Docs. 187 & 288]. The Plaintiff's associated Motion in Limine [Doc. 288] will be dealt with in a separate order. For the reasons stated below, the Plaintiff's Motion for Sanctions [Docs. 187 & 288] is GRANTED in part and DENIED in part.

**I. Background**

The Plaintiff, AcryliCon USA, LLC, markets and sells an industrial flooring system from its headquarters in Alpharetta, Georgia.[1] The Defendant, Silikal GmbH,

---

[1]      Pl.'s Statement of Material Facts ¶ 1.

T:\ORDERS\14\AcryliCon USA, LLC\sanctions2twt.wpd

is a German corporation, which, until recently, manufactured a flooring resin exclusively for the Plaintiff.[2] In 2010, the Plaintiff resolved a prior dispute with the Defendant in this district by entering into a global settlement agreement.[3]

The Plaintiff alleges that the Defendant breached this global settlement agreement, and as a result filed suit in April 2014, well over two years ago. The litigation was moving along at an acceptable pace until the Defendant substituted counsel.[4] At a status conference on February 2, 2015, Mr. John Hutchins, counsel for the Defendant, admitted that there had been a breach of the settlement agreement. Within days of that admission, Mr. Hutchins withdrew as counsel for the Defendant, and J. David Hopkins, John Kane, and Felix Faerber (collectively "Hopkins & Kane") entered their appearance  as counsel for the Defendant.[5] During this period of the litigation, J. David Hopkins was lead counsel.

After the Plaintiff hired Hopkins & Kane, the litigation came to a screeching halt. Far too often, the Court was called on to address the Defendant's dilatory actions,

---

[2]     Id.

[3]     Id. ¶ 8.

[4]     There is no allegation that the Plaintiff's first counsel engaged in any conduct that is sanctionable.

[5]     See Docs. 79, 97, 222. Hopkins, Kane, and Faerber joined the litigation on 2/19/15, 5/6/15, and 3/4/16, respectively.

at great cost to the Court and to the Plaintiff. On April 24, 2015, Hopkins failed to

respond to the Plaintiff's Third Request for Production other than to object to every

single request.[6] This required the Defendant to file a motion to bar the Defendant from

using any of the information that it failed to disclose.[7] The Court noted in its Order

granting the Plaintiff's motion that "[n]one of the Defendant's excuses for not

responding [had] any merit."[8] This was only the beginning.

On May 29, 2015, the Plaintiff filed a motion requesting that the Court remove

the Defendant's confidentiality designations over a large group of documents, which

it argued were unwarranted and improper.[9] This Court agreed.[10] The Defendant had

designated virtually every document that it had produced, almost 93 percent, as

"confidential," and a substantial number of those were designated as "highly

confidential." This was in direct violation of the Protective Order, which required the

parties to have a good faith belief in order to designate a document as confidential and

---

[6]     See Pl.'s Mot. for Order Barring Def. From Using Information and Docs. Withheld From Discovery, Ex. B [Doc. 99].

[7]     See Pl.'s Mot. for Order Barring Def. From Using Information and Docs. Withheld From Discovery [Doc. 99].

[8]     Order Granting Pl.'s Mot. for Order, at 1 [Doc. 200].

[9]     Pl.'s Mot. to Remove Defendant's Confidentiality Designations [Doc. 103].

[10]     Order Grating Pl.'s Mot. to Remove [Doc. 199].

to refrain from marking documents as confidential for the purpose of harassing the opposing party. In granting the Plaintiff's motion, the Court noted that the Defendant had "clearly exercised bad faith in its confidentiality designations."

Also on May 29, 2015, the last day of the discovery period, the Defendant filed a motion[11] to extend discovery at 11:57 PM, claiming that the landscape of the litigation had changed such that it needed more time. The Defendant tried to blame the Plaintiff for the situation by arguing that the Plaintiff had waited until the very end of the discovery period to release important documents.[12] But the Plaintiffs had produced the documents over two weeks prior on May 14, 2015.[13] Despite this two-week window of opportunity, the Defendant waited until literally the last minute to file its motion. In any event, the alleged discovery dispute had no merit anyway. The Court said that it would "not allow a party to unilaterally obtain an extension of discovery and delay resolution of a case by manufacturing eleventh hour discovery disputes," and denied the Defendant's motion.[14]

---

[11]    Def.'s Motion for Extension of Time to Complete Discovery [Doc. 105]. Signed by Hopkins and Kane.

[12]    Id.

[13]    Id.

[14]    Order Denying Def.'s Mot. for Extension of Discovery [Doc. 198].

Shortly after filing its motion for extension, the Defendant filed a motion to compel production at 11:59 PM on the last date of discovery.[15] As this Court said in its Order denying the motion, the Defendant again manufactured a phony discovery dispute in an apparent attempt to obtain an extension of discovery.[16] "Much of the additional discovery sought [had] already been provided or [was] not even covered by the single request for production served by the Defendant upon the Plaintiff."[17] Hopkins & Kane also failed to confer with the Plaintiff in a good faith effort to resolve the dispute before filing the last minute motion in violation of Rule 37(a)(1).[18]

Just a few minutes after that, at 12:04 AM on May 30, 2015, the Defendant filed a motion to compel along with a motion for sanctions on the Plaintiff.[19] The Defendant filed a corrected version of that motion on June 14.[20] In what was once again a last minute effort to extend the discovery deadline, the Defendant argued that it needed a

---

[15]     Mot. to Compel Prod. [Doc. 106]. Signed by Hopkins and Kane.

[16]     Order Denying Def.'s Mot. to Compel Prod., at 1 [Doc. 203].

[17]     Id.

[18]     Id.

[19]     Def.'s Mot. to Compel Production Log and Mot. for Sanctions [Doc. 107].

[20]     Def.'s Corrected Mot. to Compel Production Log and Mot. for Sanctions [Doc. 114].

privilege log for emails that were well outside the scope of the litigation. Rather than respond to the arguments made by Plaintiff, however, the Defendant completely ignored them in its reply. As a result, this Court deemed the Defendant's motion abandoned.[21]

On June 12, 2015, the Defendant filed a motion for the Court to reconsider its previous ruling denying the Defendant's motion to dismiss.[22] The Defendant did not show any valid reason why the Court should reconsider its prior ruling, but simply repackaged its earlier arguments into a new motion. As a result, the Court denied the motion as being "untimely and without merit."[23]

Between July and September of 2015, the Defendant filed a series of motions to continue keeping a large number of documents under seal.[24] Rather than offer up specific reasons why these documents needed to be under seal, the Defendant continued to offer up stereotyped and conclusory statements concerning their confidentiality. It was clear that the Defendant was abusing its right to designate

---

[21]   Order Denying Def.'s Motions to Compel and for Sanctions [Doc. 205].

[22]   Def.'s Mot. for Reconsideration [Doc. 112]. Signed by Hopkins and Kane.

[23]   Order Denying Def.'s Mot. for Reconsideration [Doc. 204].

[24]   See Def.'s Motions to Seal [Docs. 141, 149, 159 & 175]. Signed by Hopkins and Kane.

documents as confidential under the Protective Order, and this Court said as much in its Orders denying all four of the Defendant's motions to seal.[25]

In addition to filing all of these frivolous motions, the Defendant also has completely disregarded the deadlines and procedures of this Court. When it came to expert witnesses, Hopkins & Kane twice filed expert witness reports that were many months past the deadline. On September 4, 2015, the Defendant filed the expert report of Peter Gampel, in an effort to rebut the Plaintiff's damages expert, Patrick Gannon.[26] This report was filed over three months past the end of the discovery period, and over four and a half months since the Plaintiff's expert report had been filed. The Defendant was required to file its expert report within 30 days of the Plaintiff's expert report, unless it had obtained a court order based upon a showing that the delay was justified.[27] The Defendant never attempted to seek a court order, nor made any sort of showing to justify its failure to adhere to the deadline. Even more incredibly, the Defendant stated in its Response to Plaintiff's Motion to Strike [Doc. 180][28] that it did not engage its expert until the last day of the discovery period.

---

[25]    Orders Denying Def.'s Motions to Seal [Docs. 209-212].

[26]    Pl.'s Expert Report of Peter Gampel [Doc. 165]. Filed by Hopkins.

[27]    See Fed. R. Civ. P. 26(a)(2)(D); see also Local Rule 26.2(C).

[28]    Signed by Hopkins and Kane.

Far from an isolated incident, however, the Defendant again filed an untimely expert report on October 22, 2015, five months after the close of discovery.[29] Not only was it five months past the discovery deadline, but it was filed nearly six months after the submission of the Plaintiff's related expert. And more incredibly than its damages expert, the Defendant did not engage this second expert until June 19, 2015.[30] This total disregard for the Court's deadlines forced the Plaintiff to make its first motion for sanctions, in addition to moving to exclude the two experts.[31]

In an apparent effort to even the score, the Defendant filed a cross-motion to exclude the Plaintiff's expert because, in the Defendant's words, their report was a "monumental 11th hour disclosure" that occurred "only six (6) weeks before the close of discovery."[32] That the Defendant could see such a small speck of dust in the Plaintiff's eye with that gigantic log in his own was remarkable. This Court dismissed that motion as frivolous.[33]

---

[29]   Pl.'s Expert Report of Roland Vierra [Doc. 185]. Filed by Hopkins.

[30]   See Def.'s Resp. to Pl.'s Mot. to Strike, Ex. B [Doc. 190].

[31]   Pl.'s Mot. to Strike Expert Report and for Sanctions [Doc. 187]. Signed by Hopkins and Kane.

[32]   Def.'s Cross Mot. to Strike, at 3 [Doc. 181]. Signed by Hopkins and Kane.

[33]   Order Denying Def.'s Cross Mot. to Strike [Doc. 216].

Unfortunately for everyone involved, the Defendant's disregard for deadlines did not stop at discovery. On June 29, 2015, which was the last day available to file summary judgment motions, the Defendant filed a motion which cited no law, facts, or anything of substance.[34] The motion was intended as a placeholder while the Defendant sought an extension of time. But one day after the Court *denied* the Defendant's motion for an extension, the Defendant filed an amended motion which made legal arguments for the first time.[35] This Court denied the second motion as untimely because it was a transparent attempt to file a completely new motion nearly six weeks after the scheduled deadline by captioning it as an "amended" motion.

The Defendant also moved to dismiss the case on the basis of *forum non conveniens*.[36] Normally, filing such a motion is perfectly acceptable. But also, such motions are normally filed at the beginning of litigation. The Defendant waited to file its motion in December of 2015, over six months past the end of discovery and after motions for summary judgment had already been submitted. Apart from its extraordinary untimeliness, the motion was also doomed to fail on the merits anyway,

---

[34]    Def.'s Mot. for Summ. J. [Doc. 133]. Signed by Hopkins and Kane.

[35]    Def.'s Amended Mot. for Summ. J. [Doc. 154]. Signed by Hopkins and Kane.

[36]    Def.'s Mot. for Leave to File Mot. to Dismiss on Grounds of Forum Non Conveniens [Doc. 192]. Signed by Hopkins and Kane.

as a forum selection clause the Defendant had agreed to gave this Court exclusive jurisdiction. Accordingly, the Court summarily denied the motion.

And in one final example of Hopkins & Kane's inability to listen to directions, the Defendant expressly ignored the clear warnings of this Court to stay on topic during the deposition of Bjorn Hegstad. On February 24, 2016, the Court declined to restrict the topics to be covered in Mr. Hegstad's deposition. However, the Court strongly urged the Defendant to avoid questioning about topics that were irrelevant to the immediate case at hand, and reminded the Defendant that it had taken the Plaintiff's motion for sanctions under advisement.[37] The Defendant ignored this warning, and even more brazenly filed a motion to compel the witness to testify about the very subject this Court had urged it to avoid.[38] The Court denied the Defendant's motion as the topics to be covered were completely irrelevant and had nothing to do with this case.

In their last dilatory act as the Defendant's counsel, Hopkins & Kane filed a motion to stay or continue the trial pending its appeal of this Court's denial of its motion to dismiss.[39] That same day, the Defendant filed a motion to relieve Hopkins

---

[37]   Order Granting in Part and Denying in Part Mot. for Protective Order [Doc. 220].

[38]   Def.'s Mot. to Compel [Doc. 237]. Signed by Hopkins.

[39]   Def.'s Mot. to Stay, Mot. to Continue [Doc. 268].

& Kane as counsel,[40] and substituted John Da Grosa Smith, F. Ronald Jenkins, and

Kristina Jones as counsel.

## II. Discussion

The Plaintiff moves for sanctions under 28 U.S.C. § 1927, which authorizes

sanctions against any attorney who "multiplies the proceedings in any case

unreasonably and vexatiously...." Sanctions under section 1927 are personally

assessed against the offending attorney, and can include "excess costs, expenses, and

attorneys' fees reasonably incurred because of such conduct."[41] The Eleventh Circuit

has "consistently held that an attorney multiplies proceedings 'unreasonably and

vexatiously' within the meaning of the statute only when the attorney's conduct is so

egregious that it is "tantamount to bad faith."[42] In the context of section 1927, bad

faith does not require bad intent; rather, bad faith is judged on an objective basis by

judging the attorney's conduct against the conduct of a "reasonable" attorney.[43] But

---

[40]     Def.'s Mot. to Withdraw [Doc. 269]. The Court has so far declined to
address this motion.

[41]     28 U.S.C. § 1927.

[42]     Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1239 (11th Cir.
2006) (citing  Avirgan v. Hull, 932 F.2d 1572, 1582 (11th Cir. 1991)).

[43]     Id. at 1239-40.

that is not to say that intent is irrelevant, as malicious intent could go a long way towards proving bad faith.[44]

Negligent conduct, however, is not enough.[45] Section 1927 was not created as "a 'catch-all' provision for sanctioning objectionable conduct by counsel..."[46] The statute was designed to sanction attorneys who "willfully abuse judicial process by conduct tantamount to bad faith."[47] Thus, "a determination of bad faith is warranted where an attorney knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims."[48] It is the latter charge that concerns the Court in this case.

If circumstances were different and only one or maybe a handful of the Defendant's dilatory actions in this case were at issue, this Court might be reluctant to find bad faith. But when the Defendant commits a long train of abuses, clearly designed to delay and hamper litigation, the good faith of any particular action becomes significantly more suspect when viewed in its larger context. In this case,

---

[44]     Id. at 1241.

[45]     Id. at 1241-42.

[46]     Schwartz v. Millon Air, Inc., 341 F.3d 1220, 1225 (11th Cir. 2003).

[47]     Avirgan, 932 F.2d at 1582.

[48]     Schwartz, 341 F.3d at 1225.

deadlines were repeatedly ignored by the Defendant's counsel. Rather than filing for

an extension of time, the Defendant's counsel often just ignored the deadline

altogether. For example, the Defendant's Motion for Leave to File a Motion to

Dismiss based on Forum Non Conveniens [Doc. 192] was submitted well after

motions for summary judgment had already been filed. Likewise, the Court similarly

granted the Plaintiff's motion to exclude the Defendant's expert witness because the

expert was disclosed well past the discovery deadline. And in the rare circumstance

where the Defendant did file a motion for an extension, the Defendant still ignored the

Court completely. Just a day after this Court *denied* the Defendant's motion for an

extension of discovery, the Defendant's counsel tried to pass off an entirely new

motion as an "amended" motion.

Any one of these untimely motions would likely be enough to justify sanctions

and find bad faith.[49] But the Defendant not only ignored deadlines, it abused its right

to designate documents as confidential, it filed multiple frivolous and meritless

motions, and it ignored this Court's directions and warnings on numerous occasions.

When viewed collectively, this series of nearly twenty different dilatory filings and

actions are at best reckless and clearly sanctionable, even if any individual motion,

---

[49]     See Goode v. Wild Wing Café, 588 Fed. Appx. 870, 875 (11th Cir. 2014)
(upholding sanctions against an attorney for filing a motion to compel over three
months after the end of the discovery period).

viewed exclusively on its own, might not rise to the level of conduct sanctionable under section 1927. There can be no doubt that bad faith infects all of the filings discussed above.

The only questions that remain, then, are who to sanction and for how much. The Plaintiff moves for sanctions against the Defendant and its counsel, but section 1927 only allows sanctions against attorneys themselves. On top of that, the Court has not seen enough evidence to suggest that the Defendant itself was responsible for any of the conduct at issue. While the Court declines to assess sanctions on the Defendant at this time, the Defendant would be wise to note that the Court certainly has the ability to do so in the future should the evidence warrant it.

Likewise, the Court declines to sanction Smith et al. for now. Though they seem to have fallen right back into the same unfortunate pattern of behavior as their predecessors with its first filing, they also acknowledged the mistakes of their predecessors and promised a new day. This Court is eager to see it, and the Court is willing to give them a second chance. But the Court will keep the Plaintiff's renewed motion for sanctions against Smith et al. under advisement. Hopefully, the Court will be able to deny this motion at a future date.

That leaves Hopkins & Kane. Hopkins was the lead attorney and signed all of the offending filings during the time they were employed by Defendant. As such, he

is responsible for all of the actions and filings submitted to this Court during the time

Hopkins & Kane were the main attorneys on the case. Likewise, Kane signed most of

the filings submitted before the Court from the time he was hired. On the other hand,

Faerber was only added as counsel late in the litigation, he did not sign any of the

filings which the Court has found to show bad faith, and is an associate at the firm

where Hopkins is Of Counsel. And, to the Court's knowledge, Faerber has only been

practicing law for a short time. Considering that liability under section 1927 is tied to

the attorney's personal conduct, and that experience of an attorney is a relevant

consideration,[50] the Court declines to sanction Faerber under section 1927. But as

regards to Hopkins & Kane, it is clear based on the evidence that they were the ones

who decided on this unfortunate strategy and lent their names to the documents they

filed before this Court. Therefore, the Court finds Hopkins and Kane jointly and

severally liable[51] for costs the Plaintiff incurred as a result of the conduct under which

---

[50]     Blue v. U.S. Dep't of Army, 914 F.2d 525, 546 (4th Cir. 1990).

[51]     See Lightspeed Media Corp. v. Smith, 761 F.3d 699, 709-10 (7th Cir.
2014) (affirming a decision finding attorneys jointly and severally liable after it had
found them both directly liable themselves).

they were both responsible,[52] and finds Hopkins solely responsible for those actions which were done only under his own name.[53]

As for the amount of the sanctions themselves, the Court has not yet heard evidence on the actual costs incurred as a result of the sanctioned conduct. The Court, therefore, invites the parties to submit briefing and/or to schedule a hearing to present evidence of costs. The Court also invites the parties to submit evidence as to whether Hopkins, Kane, or both are responsible for the behavior associated with the designation of documents as confidential as referenced in the Plaintiff's Motion to Remove Defendant's Confidentiality Designations [Doc. 103].

---

[52] These include documents they filed, as well as actions which required the Plaintiff to file motions seeking relief from the Court. The associated docket numbers are Docs. 105, 106, 114, 141, 149, 154, 159, 165, 175, 181, 185, 192, and 257. The docket numbers do not reflect the full range of associated filings for which costs may be recovered, but are the starting point (E.g., Doc. 141 is a Motion to Continue Protection filed by the Defendant. The Plaintiff could present evidence of costs added because of the addition of that sanctionable filing, including the Response at Doc. 145.).

[53] The associated docket number is Doc. 99.

### III. Conclusion

This Court is highly reluctant to sanction an attorney in order to maintain the integrity of its cases. Usually, the Court relies on the comity, humility, and skill of the attorneys involved to quickly harmonize dissonance. Self-correction helps to keep the litigation moving towards its final resolution at a decent tempo. The Court may, every once in a while, strongly encourage the parties to change their tune when necessary. Ordinarily, this is enough.

But Hopkins and Kane have shown a disturbing lack of ordinary professionalism. Through their conduct, this case has become an absolute mess and the patience of this Court has been exhausted. Thus, for the reasons stated above, the Plaintiff's Motion for Sanctions [Docs. 187 & 288]  is GRANTED in part and DENIED in part, and kept under advisement as to the remaining potentially sanctionable parties. The Court invites the interested parties to submit briefing and/or schedule a hearing to determine costs and final liability.

SO ORDERED, this 27 day of October, 2016.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge