# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

ACRYLICON USA, LLC,

     Plaintiff,

                v.

SILIKAL GMBH,

     Defendant.

No. 1:14-CV-01072-TWT

## DEFENDANT SILIKAL GMBH'S JURY INSTRUCTIONS

Pursuant to Rule 51 of the Federal Rules of Civil Procedure and the Court's Order dated July 12, 2016 [ECF No. 274], Defendant Silikal GmbH (Silikal) submits these proposed jury instructions and requests that the Court instruct the jury on the law contained in these instructions. Silikal respectfully reserves the right to supplement, withdraw, or modify these requests depending on the evidence presented, the arguments of counsel, and the requests for instructions, if any, filed by Plaintiff AcryliCon USA, LLC (AcryliCon USA).

# **TABLE OF CONTENTS**

Introduction ....................................................................................10

Silikal's Contentions .......................................................................11

Preliminary Instructions ..................................................................12

    Silikal's Request No. 1.1: General Preliminary instruction ..........13

        Members of the Jury:............................................................13

        What is evidence: .................................................................13

        What is not evidence: ...........................................................14

        Credibility of witnesses:.......................................................15

        Description of the case: ........................................................16

        Burden of proof: ..................................................................16

        Conduct of the jury:.............................................................17

        Taking notes: .......................................................................19

        Course of the trial:...............................................................19

    Silikal's Request No. 1.2: Burden of Proof – Clear and
    Convincing Evidence....................................................................21

    Silikal's Request No. 1.3: Official English
    Translation/Interpretation .............................................................22

    Silikal's Request No. 1.4: Jury Questions ....................................23

    Silikal's Request No. 1.5: Interim Statements..............................25

    Silikal's Request No. 1.6:  Effect of Summary Judgment on
    Prior Claims .................................................................................26

Trial Instructions .............................................................................27

Silikal's Request No. 2.1: Stipulations ...........................................................28

Silikal's Request No. 2.2: Use of Depositions ...............................................29

Silikal's Request No. 2.4: Interim Statements................................................30

Silikal's Request No. 2.6: Use of Interrogatories...........................................31

Silikal's Request No. 2.7: In-Trial Instructions on News
Coverage ..........................................................................................................32

Silikal's Request No. 2.8: Civil Allen Charge ...............................................33

Basic Instructions .................................................................................................35

Silikal's Request No. 3.2.2: The Duty to Follow Instructions –
Corporate Party Involved.................................................................................36

Silikal's Request No. 3.3: Consideration of Direct and
Circumstantial Evidence;  Argument of Counsel; Comments by
the Court ..........................................................................................................37

Silikal's Request No. 3.4: Credibility of Witnesses .....................................38

Silikal's Request No. 3.5.1: Impeachment of Witnesses
Because of Inconsistent Statements................................................................40

Silikal's Request No. 3.6.1: Expert Witness .................................................41

Silikal's Request No. 3.6.2: Expert Witness – When Expert
Fees Represent a  Significant Portion of the Witness's Income ..................42

Silikal's Request No. 3.7.1: Responsibility for Proof –
Plaintiff's Claim[s], Cross Claims, Counterclaims –
Preponderance of the Evidence ......................................................................43

Silikal's Request No. 3.7.2: Responsibility for Proof –
Affirmative Defense  Preponderance of the Evidence ..................................44

Silikal's Request No. 3.8.1: Duty to Deliberate When Only the
Plaintiff Claims Damages................................................................................46

Silikal's Request No. 3.9: Election of Foreperson Explanation of Verdict Form ......................................................................47

Trademark Infringement, Unfair Competition  and Georgia Unfair and Deceptive Trade Practices Act   Common Elements ................................49

Silikal's Request No. 4.1: Likelihood of Confusion ....................................50

Silikal's Request No. 4.2:  Likelihood of Confusion Defined .....................51

Silikal's Request No. 4.3:  Likelihood of Confusion Factors ......................52

Silikal's Request No. 4.4: Evidence of Actual Confusion ...........................54

Silikal's Request No. 4.5: Causation – Effect on Purchasing Decision ........................................................................................55

Silikal's Request No. 4.6:  Silikal's Affirmative Defenses ..........................56

Silikal's Request No. 4.7:  Defendant's Affirmative Defenses – Unclean Hands .......................................................................57

Silikal's Request No. 4.8:  Trademark Damages – Actual Damages ............................................................................58

Silikal's Request No. 4.9:  Accounting of [Revenue] ~~Profits~~ Not Automatic ..........................................................................60

Silikal's Request No. 4.10:  Standard for Granting an Accounting of [Revenue] ~~Profits~~ ...............................................61

Silikal's Request No. 4.11:  Deliberate and Willful Intent to Infringe ...........................................................................62

Silikal's Request No. 4.12:  Unjust Enrichment ..........................................63

Silikal's Request No. 4.13: Deterrence of Future Trademark Infringement .....................................................................64

Silikal's Request No. 4.14:  Accounting of [Revenues] ~~Profits~~ – Apportionment .................................................................65

Silikal's Request No. 4.15:  Punitive Damages – Definition ........................66

**Misappropriation Of Trade Secrets Georgia Trade Secret Act
(Count One)** ...............................................................................68

Silikal's Request No. 5.1: Misappropriation of Trade Secret ......................69

Silikal's Request No. 5.2: Trade Secret........................................................71

Silikal's Request No. 5.3: Misappropriation .................................................72

Silikal's Request No. 5.4: Damages .............................................................74

Silikal's Request No. 5.5: Unjust Enrichment ..............................................75

Silikal's Request No. 5.6: Misappropriation of Trade Secrets –
Damages – Royalty.......................................................................................76

Silikal's Request No. 5.7: Willfulness ..........................................................77

**Lanham Act, 15 U.S.C. § 1125 And Infringement Of Common
Law Trademark Rights  (Count Two)** .......................................................79

Silikal's Request No. 10.1.1: Trademark Infringement –
Registered Trademark...................................................................................80

Silikal's Request No. 10.1.2: Infringement – Introductory Jury
Charge [Registered Trademark] ...................................................................82

Silikal's Request No. 10.1.3: Infringement [Registered
Trademark] ...................................................................................................83

Silikal's Request No. 10.1.4: Infringement: Likelihood of
Confusion (Seven-Factor Test)  [Registered Trademark] .............................84

    1.    Type and Strength of AcryliCon USA's Trademark ...............84

    2.    Similarity of the Parties' Trademarks .....................................87

    3.    Similarity of the Parties' Goods..............................................88

4.    Similarity of the Parties' Sales Channels,
      Distribution, and Customers ......................................88

5.    Similarity of the Parties' Advertising Media...........88

6.    Silikal's Intent ...........................................................88

7.    Actual Confusion ......................................................89

Silikal's Request No. 10.1.5: Trademarks: Remedies
[Registered Trademark]...........................................................90

Silikal's Request No. 10.1.6: Plaintiff's Actual Monetary
Damages [Registered Trademark] ...........................................91

Silikal's Request No. 10.1.7: Defendant's Profits and
Calculation of [Revenue] ~~Profits~~ [Registered Trademark]............92

Silikal's Request No. 10.1.8: Nominal Damages [Registered
Trademark] ...............................................................................94

Silikal's Request No. 10.2.1: Trademark Infringement –
Unregistered Trademark .........................................................95

      Validity ......................................................................95

      Used in Commerce ...................................................95

      Distinctiveness..........................................................97

      Acquired Distinctiveness..........................................97

      Inherent Distinctiveness ...........................................98

      Nonfunctionality.....................................................100

Silikal's Request No. 10.2.2: Infringement – Introductory
Infringement Jury Charge  [Unregistered Trademark]...............102

Silikal's Request No. 10.2.3: Infringement [Unregistered
Trademark] .............................................................................104

Silikal's Request No. 10.2.4: Infringement: Likelihood of
Confusion (Seven-Factor Test) [Unregistered Trademark].........................105

    1.    Type and Strength of AcryliCon USA's Trademark .............105

    2.    Similarity of the Parties' Trademarks .....................................106

    3.    Similarity of the Parties' Goods..............................................106

    4.    Similarity of the Parties' Sales Channels,
        Distribution, and Customers ....................................................106

    5.    Similarity of the Parties' Advertising Media..........................106

    6.    Silikal's Intent .........................................................................107

    7.    Actual Confusion .....................................................................107

Silikal's Request No. 10.2.5: Remedies [Unregistered
Trademark] .....................................................................................................109

Silikal's Request No. 10.2.6: Plaintiff's Actual Monetary
Damages [Unregistered Trademark] ...............................................................110

Silikal's Request No. 10.2.7: Defendant's [Revenue] ~~Profits~~
and Calculation of [Revenue] ~~Profits~~ [Unregistered Trademark] ..............111

Silikal's Request No. 10.2.8: Nominal Damages-[Unregistered
Trademark] .....................................................................................................113

Silikal's Request No. 10.3: Defenses to Claim of Infringement
of a Trademark................................................................................................114

Silikal's Request No. 10.5.1: Trademark Dilution .......................................116

Silikal's Request No. 10.5.2: Affirmative Defenses [Dilution] ..................120

Silikal's Request No. 10.5.3: Remedies [Dilution] ......................................121

Silikal's Request No. 10.5.4: Plaintiff's Actual Monetary
Damages [Dilution] ........................................................................................122

Silikal's Request No. 10.5.5: Defendant's [Revenues] ~~Profits~~ and Calculation of [Revenue] ~~Profits~~ [Dilution] .........................................123

Silikal's Request No. 10.6.1: Trademark Counterfeiting ...........................125

Silikal's Request No. 10.6.2: Remedies .....................................................126

Silikal's Request No. 10.6.3: Plaintiff's Actual Monetary Damages...................................................................................................127

Silikal's Request No. 10.6.4: Defendant's [Revenues] ~~Profits~~ and Calculation of [Revenue] ~~Profits~~ ..........................................................128

Silikal's Request No. 10.8: Trademarks – False Advertising ....................130

Silikal's Request No. 10.9: Trademark Reverse Passing Off.....................131

**Federal Unfair Competition  (Count Three)** ...........................................133

Silikal's Request No. 6.1: Unfair Competition ...........................................134

**Trademark And Unfair Competition – Georgia Law  (Count Four)**...................................................................................................135

Silikal's Request No. 7.1: Punitive Damages..............................................136

**Trademark Infringement And Unfair Competition Georgia Common Law  (Count Five)**.................................................................138

Silikal's Request No. 8.1: Unfair Competition ...........................................139

Silikal's Request No. 8.2: Unfair Competition – Damages ........................140

**Georgia Uniform Deceptive Or Unfair  Trade Practices Act (Count Six)** ................................................................................................141

Silikal's Request No. 9.1: Deceptive Trade Practices.................................142

Silikal's Request No. 9.2: Definition of a Good or Service ........................144

Silikal's Request No. 9.3: Future Injury.....................................................145

**Breach Of Contract  (Count Seven)** ...................................................146

Silikal's Request No. 11.1.2:  Contract Damages ......................................147

Silikal's Request No. 11.1.2:  Contract Damages; Nominal
Damages...................................................................................................148

Silikal's Request No. 11.1.3: Contract Damages; Attorneys'
Fees (Expenses of Litigation); Generally ..................................................149

Silikal's Request No. 11.1.4: Contract Damages; Attorney's
Fees (Expenses of Litigation); Exemplary Damages .................................150

Silikal's Request No. 11.1.5: Contract Damages; Remote or
Consequential ..........................................................................................151

Silikal's Request No. 11.1.6: Plaintiff's Duty to Lessen
Contract Damages.....................................................................................152

## INTRODUCTION

These proposed jury instructions are based largely on the Eleventh Circuit Civil Pattern Jury Instructions (2013), the Eleventh Circuit Civil Pattern Jury Instructions (2005), and the Georgia Suggested Pattern Jury Instructions: Volume I, Civil Cases, prepared by the Council of Superior Court Judges of Georgia.[1] Some proposed instructions are adapted from statutory language or case law.

Where one of Silikal's proposed instructions cites any of these sources directly and without a citation signal, the proposed instruction is taken verbatim from the cited source, and the applicable changes are contained in brackets. Where one of Silikal's proposed instructions cites an instruction in a section of any of these sources with a citation signal, the cited section supports the proposed instruction.

For the Court's convenience, a citation to a specific section of any of these sources indicates that both the specific section and all of the authority cited therein support the proposed instruction.

---

[1]   Cited as Superior Court Council.

## **SILIKAL'S CONTENTIONS**

This case centers on allegations that Silikal sold 1061 SW resin—a product that AcryliCon USA claims is its proprietary and exclusive trade secret—for years without AcryliCon USA's knowledge or permission. AcryliCon USA contends that Silikal packaged up the 1061 SW resin and sold it as Silikal resin R 61 H. AcryliCon USA contends that these sales occurred "throughout the world, including in the United States." There is no evidence to support the assertion that there were ever such sales in the United States. AcryliCon USA only holds a license to sell AcryliCon USA products in certain areas of the United States. Accordingly sales outside of the United States could not have caused any harm to AcryliCon USA.

The formula for the 1061 SW resin was developed by Silikal beginning in 1977, long before it had a relationship with AcryliCon USA or any entity related to AcryliCon USA. AcryliCon USA did not create or develop that formula. The April 2010 Global Settlement Agreement between, among others, Silikal and AcryliCon USA, did not convey or assign the formula to AcryliCon USA. AcryliCon USA does not own it.

## **PRELIMINARY INSTRUCTIONS**

**Silikal's Request No. 1.1:**
**General Preliminary instruction**

**Members of the Jury:**

Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial. The jury's duty: It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply—and you must follow the law even if you disagree with it.

**What is evidence:**

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion. Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain. Indirect evidence like this is also called "circumstantial evidence"— simply a chain of circumstances that likely proves a fact. As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or

disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

**What is not evidence:**

During the trial, you'll hear certain things that are not evidence and you must not consider them. First, the lawyers' statements and arguments aren't evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations. Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did—unless the witness agrees with it. There are rules of evidence that control what the court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if he or she thinks the rules of evidence don't permit it. If I overrule the objection, then the witness may answer the question or the court may receive the exhibit. If I sustain the objection, then the witness cannot answer the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you

must ignore the question and not guess what the answer might have been. Sometimes I may disallow evidence—this is also called "striking" evidence—and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case. I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

**Credibility of witnesses:**

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

- the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;

- the witness's memory;

- the witness's manner while testifying;

- any interest the witness has in the outcome of the case;

- any bias or prejudice the witness may have;

- any other evidence that contradicts the witness's testimony;

- the reasonableness of the witness's testimony in light of all the evidence; and

- any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

**Description of the case:**

This is a civil case. To help you follow the evidence, I'll summarize the parties' positions. The Plaintiff, AcryliCon USA, claims the Defendant, Silikal, misappropriated AcryliCon USA's trade-secret resin, infringed AcryliCon USA's trademarks, misused Silikal's own trademarks, and engaged in unfair competition and trade practices under Georgia and federal law. AcryliCon USA contends that Silikal has been selling a proprietary, exclusive, and trade-secret flooring resin (1061 SW) to others, without AcryliCon USA's knowledge or permission.

Silikal denies those claims and further contends that it did not sell the 1061 SW resin in the United States. Nor did Silikal sell a similar resin (R 61 H) in the United States. Silikal denies that AcryliCon USA is entitled to any damages on any of its claims. Among other affirmative defenses, Silikal asserts the defenses of release, accord and satisfaction, estoppel, waiver, and unclean hands.

**Burden of proof:**

AcryliCon USA has the burden of proving its case by what the law calls a "preponderance of the evidence." That means AcryliCon USA must prove that, in

light of all the evidence, what it claims is more likely true than not. So, if you could put the evidence favoring AcryliCon USA and the evidence favoring Silikal on opposite sides of balancing scales, AcryliCon USA needs to make the scales tip to its side. If AcryliCon USA fails to meet this burden, you must find in favor of Silikal.

To decide whether any fact has been proved by a preponderance of the evidence, you may—unless I instruct you otherwise—consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

On certain issues, called "affirmative defenses," Silikal has the burden of proving the elements of a defense by a preponderance of the evidence. I'll instruct you on the facts Silikal must prove for any affirmative defense. After considering all the evidence, if you decide that Silikal has successfully proven that the required facts are more likely true than not, the affirmative defense is proved.

**Conduct of the jury:**

While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information about when you must be in court. But you must not discuss anything about the case

itself with anyone. You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything—all the evidence, the lawyers' closing arguments, and my instructions on the law—before you begin deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision. In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means. This includes e-mails, text messages, and the Internet, including social networking websites such as Facebook, [Instagram, Snapchat], and Twitter. You also shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you

jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair—no one else is so qualified.

**Taking notes:**

If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please don't share them with anyone until you go to the jury room to decide the case. Don't let note-taking distract you from carefully listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They're not entitled to greater weight than your memory or impression about the testimony.

**Course of the trial:**

Let's walk through the trial. First, each side may make an opening statement, but they don't have to. Remember, an opening statement isn't evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove. Next, AcryliCon USA will present its witnesses and ask them questions. After AcryliCon USA questions the witness, Silikal may ask the witness questions—this is called "cross-examining" the witness. Then Silikal will present its witnesses, and AcryliCon USA may cross-examine them. You should base your decision on all the

evidence, regardless of which party presented it. After all the evidence is in, the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you, and then I'll give you instructions on the law. You'll then go to the jury room to deliberate.

### Authorities

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 1.1.

**Silikal's Request No. 1.2:**
**Burden of Proof – Clear and Convincing Evidence**

Sometimes a party has the burden of proving a claim or defense by clear and convincing evidence. This is a higher standard of proof than proof by a preponderance of the evidence. It means the evidence must persuade you that the claim or defense is highly probable or reasonably certain. The court will tell you when to apply this standard.

**Authorities**

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 1.2.

**Silikal's Request No. 1.3:**
**Official English Translation/Interpretation**

You may hear or see languages other than English during this trial [including German]. You must consider evidence provided through only the official ~~court~~ [interpreters/translators]. It is important that all jurors consider the same evidence. So even if some of you know German, you must accept the English [interpretation/translation] provided and disregard any different meaning.

**Authorities**

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 1.3.

**Silikal's Request No. 1.4:**
**Jury Questions**

During this trial, you may submit questions to a witness after the lawyers have finished their own questioning. Here is how the procedure works:

After each witness has testified, and the lawyers have asked all of their questions, I'll ask if any of you have questions. If you have a question, write it down and give it to the court staff. You may submit a question for a witness only to clarify an answer or to help you understand the evidence. Our experience with juror questions indicates that jurors rarely have more than a few questions for any one witness, and there may be no questions at all for some witnesses. If you submit a question, the court staff will give it to me and I'll share your questions with the lawyers in the case. If the rules of evidence allow your question, one of the lawyers or I will read your question to the witness. I may modify the form or phrasing of a question so that it's allowed under the evidence rules. Sometimes, I may not allow the questions to be read to the witness, either because the law does not allow it or because another witness is in a better position to answer the question. If I can't allow the witness to answer a question, you must not draw any conclusions from that fact or speculate on what the answer might have been.

Here are several important things to keep in mind about your questions for the witnesses:

- First, you must submit all questions in writing. Please don't ask any questions aloud.

- Second, the court can't re-call witnesses to the stand for additional juror questions. If you have a question for a particular witness, you must submit it when I ask.

- Finally, because you should remain neutral and open-minded throughout the trial, you should phrase your questions in a way that doesn't express an opinion about the case or a witness. You must keep an open mind until you've heard all the evidence, the closing arguments, and my final instructions on the law.

### Authorities

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 1.4.

**Silikal's Request No. 1.5:**
**Interim Statements**

At times during the trial, the lawyers will address you. You'll soon hear the lawyers' opening statements, and at the trial's conclusion you'll hear their closing arguments. Sometimes the lawyers may choose to make short statements to you, either to preview upcoming evidence or to summarize and highlight evidence they just presented. These statements and arguments are the lawyers' views of the evidence or of what they anticipate the evidence will be. They are not evidence themselves.

**Authorities**

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 1.5.

**Silikal's Request No. 1.6:**
**Effect of Summary Judgment on Prior Claims**

In this case, I have granted partial summary judgment to AcryliCon USA. That means that on [one] ~~some~~ counts, I have found that there are no genuine issues of material facts and that AcryliCon USA is entitled to judgment in its favor as a matter of law. On other counts, ~~I have found that~~ there are material factual disputes that you must decide. You should not interpret the fact that I have previously decided a certain claims in favor of AcryliCon USA as an indication in any way that Silikal should or should not win on the claims you must decide.

**Authorities**

*White v. Murtha*, 377 F.2d 428, 431-32 (5th Cir. 1967); *U.S. v. Escobar-Urrego*, 110 F.3d 1556, 1561 (11th Cir. 1997); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986).

# **TRIAL INSTRUCTIONS**

**Silikal's Request No. 2.1:**
**Stipulations**

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case.

**Authorities**

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 2.1.

**Silikal's Request No. 2.2:**
**Use of Depositions**

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers. The deposition of [name of witness], taken on [date], [has been] presented to you [by a video/by reading the transcript]. Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court. [Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.]

**Authorities**

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 2.2.

**Silikal's Request No. 2.4:**
**Interim Statements**

At the beginning of the trial, I told you that the lawyers might make short statements previewing upcoming evidence or summarizing and highlighting evidence that they have already presented before. Right now, [Mr.] [name of attorney] is going to make a short statement. Please remember that the statement you are about to hear—like all statements by the lawyers—is [Mr.] [name of attorney]'s view of the evidence or of what [he] anticipates the evidence will be, but isn't itself evidence.

**Authorities**

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 2.4.

**Silikal's Request No. 2.6:**
**Use of Interrogatories**

[You've heard] answers that [name of party] gave in response to written questions the other side submitted. The questions are called "interrogatories." Before the trial, [name of party] gave the answers in writing while under oath. You must consider [name of party]'s answers to as though [name of party] gave the answers on the witness stand.

**Authorities**

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 2.6.

**Silikal's Request No. 2.7:**
**In-Trial Instructions on News Coverage**

Reports about this trial [or about this incident] may appear in the media. The reporters may not have heard all the testimony as you have, may be getting information from people who are not under oath and subject to cross examination, may emphasize an unimportant point, or may simply be wrong. You must not read, listen to, or watch anything about this trial. It would violate your oath as a juror to decide this case on anything other than the evidence presented at trial and on your own common sense. You must decide this case exclusively on the evidence you receive here in court.

**Authorities**

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 2.7.

**Silikal's Request No. 2.8:**
**Civil Allen Charge**

Members of the jury: I'm going to ask you to continue your deliberations to reach a verdict. Please consider the following comments. This is an important case. The trial has been expensive in terms of time, effort, money, and emotional strain to both the plaintiff and the defendant. If you fail to agree on a verdict, the case remains open and may have to be tried again. A second trial would be costly to both sides, and there's no reason to believe either side can try it again better or more exhaustively than they have tried it before you. Any future jury would be selected in the same manner and from the same source as you. There's no reason to believe that the case could ever be submitted to a jury of people more conscientious, more impartial, or more competent to decide it—or that either side could produce more or clearer evidence. It's your duty to consult with one another and to deliberate with a view to reaching an agreement—if you can do it without violating your individual judgment. You must not give up your honest beliefs about the evidence's weight or effect solely because of other jurors' opinions or just to return a verdict. You must each decide the case for yourself—but only after you consider the evidence with your fellow jurors. You shouldn't hesitate to reexamine your own views and change your opinion if you become convinced it's wrong. To bring your minds to a unanimous result, you must openly and frankly examine the questions submitted to

you with proper regard for the opinions of others and with a willingness to reexamine your own views. If a substantial majority of you is for a verdict for one party, each of you who holds a different position ought to consider whether your position is reasonable. It may not be reasonable since it makes so little impression on the minds of your fellow jurors—who bear the same responsibility, serve under the same oath, and have heard the same evidence. You may conduct your deliberations as you choose, but I suggest that you now carefully reexamine and reconsider all the evidence in light of the court's instructions on the law. You may take all the time that you need. I remind you that in your deliberations, you are to consider the court's instructions as a whole. You shouldn't single out any part of any instructions, including this one, and ignore others. You may now return to the jury room and continue your deliberations.

### Authorities

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 2.8.

# **BASIC INSTRUCTIONS**

**Silikal's Request No. 3.2.2:**
**The Duty to Follow Instructions – Corporate Party Involved**

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone. You must follow the law as I explain it—even if you do not agree with the law— and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law. The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

**Authorities**

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 3.2.2.

**Silikal's Request No. 3.3:**
**Consideration of Direct and Circumstantial Evidence;**
**Argument of Counsel; Comments by the Court**

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you. You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts. Your own recollection and interpretation of the evidence is what matters. In considering the evidence, you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial. "Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness. "Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

**Authorities**

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 3.3.

**Silikal's Request No. 3.4:**
**Credibility of Witnesses**

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter. To decide whether you believe any witness I suggest that you ask yourself a few questions:

- Did the witness impress you as one who was telling the truth?

- Did the witness have any particular reason not to tell the truth?

- Did the witness have a personal interest in the outcome of the case?

- Did the witness seem to have a good memory?

- Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

- Did the witness appear to understand the questions clearly and answer them directly?

- Did the witness's testimony differ from other testimony or other evidence?

**Authorities**

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 3.4.

**Silikal's Request No. 3.5.1:**
**Impeachment of Witnesses Because of Inconsistent Statements**

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something that was different from the testimony the witness gave during this trial. But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

**Authorities**

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 3.5.1.

**Silikal's Request No. 3.6.1:**
**Expert Witness**

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter. But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

**Authorities**

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 3.6.1.

**Silikal's Request No. 3.6.2:**
**Expert Witness – When Expert Fees Represent a**
**Significant Portion of the Witness's Income**

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter. But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion. When a witness is being paid for reviewing and testifying concerning the evidence, you may consider the possibility of bias and should view with caution the testimony of such witness where court testimony is given with regularity and represents a significant portion of the witness's income.

**Authorities**

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 3.6.2.

**Silikal's Request No. 3.7.1:**
**Responsibility for Proof – Plaintiff's Claim[s], Cross Claims, Counterclaims –**
**Preponderance of the Evidence**

In this case it is the responsibility of AcryliCon USA to prove every essential part of its claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion." A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that AcryliCon USA's claim is more likely true than not true. If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against AcryliCon USA. [When more than one claim is involved, you should consider each claim separately.] In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them. If the proof fails to establish any essential part of AcryliCon USA's claims by a preponderance of the evidence, you should find for Silikal as to that claim.

**Authorities**

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 3.7.1.

**Silikal's Request No. 3.7.2:**
**Responsibility for Proof – Affirmative Defense**
**Preponderance of the Evidence**

In this case, Silikal asserts the affirmative defenses

- that AcryliCon USA failed to satisfy a necessary prerequisite before filing this action;

- of release;

- of accord and satisfaction;

- of estoppel;

- of waiver;

- of unclean hands; and

- that AcryliCon USA's claims seek to restrict or limit Silikal's legitimate business.

Even if AcryliCon USA proves its claims by a preponderance of the evidence, Silikal can prevail in this case if it proves an affirmative defense by a preponderance of the evidence. [When more than one affirmative defense is involved, you should consider each one separately.] I caution you that Silikal does not have to disprove AcryliCon USA's claims, but if Silikal raises an affirmative defense, the only way it can prevail on that specific defense is if it proves that defense by a preponderance of the evidence.

**Authorities**

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 3.7.2.

### Silikal's Request No. 3.8.1:
### Duty to Deliberate When Only the Plaintiff Claims Damages

Of course, the fact that I have given you instructions concerning the issue of Plaintiff's damages should not be interpreted in any way as an indication that I believe that the Plaintiff should, or should not, prevail in this case. Your verdict must be unanimous—in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone. Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with. Remember that, in a very real way, you're judges— judges of the facts. Your only interest is to seek the truth from the evidence in the case.

### Authorities

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 3.8.1.

**Silikal's Request No. 3.9:**
**Election of Foreperson**
**Explanation of Verdict Form**

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court. ~~A verdict form has been prepared for your convenience. Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.[2]~~ If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible—either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted

---

[2]   Silikal has omitted from these instructions special interrogatories to the jury based on the Eleventh Circuit Civil Pattern Jury Instructions. Silikal believes such forms would aid the jury deciding this complex matter and reduce the likelihood of an impermissible damages award (*e.g.*, awarding a double recovery based on the same purported conduct). However, counsel for Silikal are also aware that such forms were required to be submitted to the Court as part of the Proposed Consolidated Pretrial Order. Accordingly, the special interrogatories to the jury have not been included herein but Silikal respectfully requests leave to file them with the Court prior to the charge conference.

one way or the other at that time. That type of information should remain in the jury

room and not be shared with anyone, including me, in your note or question.

### Authorities

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 3.9.

**TRADEMARK INFRINGEMENT, UNFAIR COMPETITION**
**<u>AND GEORGIA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT</u>**

**COMMON ELEMENTS**

**Silikal's Request No. 4.1:**
**Likelihood of Confusion**

In this case, you must determine whether Silikal's use of the ["1061 SW resin"] in containers [of resin labelled "R 61 H" and sold as "R 61 H"] [was] likely to cause [consumer] confusion. You must find that Silikal created a likelihood of [consumer] confusion before you can find Silikal liable for trademark infringement, unfair competition or violation of the Georgia Uniform Deceptive Trade Practices Act.

**Authorities**

*Frehling Enters., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999); O.C.G.A. § 10-1-372(a)(2); *Amstar Corp. v. Domino's Pizza*, 615 F.2d 252, 258-59 (5th Cir. 1980); *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, Order and Opinion, No. 1:04-CV-1082-TWT at 11, 28-30 (N.D. Ga. Sept. 14, 2005); O.C.G.A. § 23-2-55.

**Silikal's Request No. 4.2:**
**Likelihood of Confusion Defined**

Likelihood of confusion means a probability of confusion [among consumers], which is more than a mere possibility of confusion.

**Authorities**

*Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 663-64 (5th Cir. 2000); *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998); 3 McCarthy on Trademarks & Unfair Competition § 23:3 (4th ed. 1997).

**Silikal's Request No. 4.3:**
**Likelihood of Confusion Factors**

To determine whether there has been a likelihood of confusion, you must assess:

1.      the type of mark;

2.      the similarity between AcryliCon USA's mark and the allegedly infringing mark;

3.      the similarity between products offered by AcryliCon USA and Silikal;

4.      the similarity of the sales methods;

5.      the similarity of the advertising methods;

6.      Silikal's intent, *i.e.*, did Silikal hope to gain a competitive advantage by associating its product with AcryliCon USA's established mark; and

7.      actual confusion.

No one factor is dispositive as to the determination of whether there is a likelihood of confusion. Nor is likelihood of confusion to be determined by simply tallying the number of factors in each party's column. Rather, you must evaluate and assess the weight to be afforded each factor based on the circumstances of the case.

**Authorities**

*Frehling Enters., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999); *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, Order

and Opinion, No. 1:04-CV-1082-TWT at 12-15, 20 (N.D. Ga. Sept. 14, 2005); *Alliance Metals, Inc. of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 907 (11th Cir. 2000); *Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC*, 369 F.3d 1197, 1207 (11th Cir. 2004).

**Silikal's Request No. 4.4:**
**Evidence of Actual Confusion**

In considering whether there is a likelihood of [consumer] confusion, keep in mind that evidence of actual confusion [among consumers] is generally the most indicative of likelihood of confusion. While a plaintiff need not prove actual confusion in order to prevail, it is certainly proper for you to infer from the absence of actual confusion that there may be no likelihood of confusion.

**Authorities**

*Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1201 n.22 (11th Cir. 2001); *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 122 F.3d 1379, 1382 (11th Cir. 1997); *Dieter v. B & H Indus. of Sw. Fla., Inc.*, 880 F.2d 322, 326 (11th Cir. 1989); *McGregor-Doniger Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1136 (2d Cir. 1979) (quoting *Affiliated Hosp. Prods., Inc. v. Merdel Game Mfg. Co.*, 513 F.2d 1183, 1188 (2d Cir. 1975)).

**Silikal's Request No. 4.5:**
**Causation – Effect on Purchasing Decision**

Trademark infringement under the Lanham Act protects only against mistaken purchasing decisions based on the defendant's use of the trademark and not against confusion generally. You should only consider whether Silikal's use of [the mark] was likely to cause confusion [among consumers] that would affect the purchasing and selling of the goods in question.

### Authorities

*Lang v. Retirement Living Publ'g Co., Inc.*, 949 F.2d 576, 582-83 (2d Cir. 1991); *CCBN.com, Inc. v. C-Call.com, Inc.*, 73 F. Supp. 2d 106, 113 (D. Mass. 1999); *Alta Vista Corp. v. Digital Equip. Corp.*, 44 F. Supp. 2d 72, 79 (D. Mass 1998).

**Silikal's Request No. 4.6:**
**Silikal's Affirmative Defenses**

I will now discuss the affirmative defenses that Silikal is raising. Silikal bears the burden of proving these issues by a preponderance of the evidence. Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that Silikal's claim is correct.

**Authorities**

9th Cir. Civ. Jury Instr. 15.00 (1993) [adapted].

**Silikal's Request No. 4.7:**
**Defendant's Affirmative Defenses – Unclean Hands**

Silikal alleges that AcryliCon USA is barred from prevailing on its claims under the doctrine of unclean hands. The theory of unclean hands is that a plaintiff cannot prevail if it has engaged in inequitable conduct that related in some way to the subject matter of the lawsuit. One seeking to enforce a claim against another must not itself be guilty of any wrongdoing with respect to the claims for which it seeks enforcement.

**Authorities**

*Worthington v. Anderson*, 386 F.3d 1314, 1320 (10th Cir. 2004); Duane Burton, JURY INSTRUCTIONS IN INTELLECTUAL PROPERTY CASES, Vol. 2, 30:70:23 (citing *Kendall-Jackson Winery Ltd. v. E & J Gallo Winery*, 47 U.S.P.Q.2d 1332 (9th Cir. 1998); *Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*, 743 F.2d 1039 (4th Cir. 1984)).

**Silikal's Request No. 4.8:**
**Trademark Damages – Actual Damages**

AcryliCon USA seeks to recover the actual damages it contends it suffered. To prove actual damages, AcryliCon USA must show that those actual damages were caused by the trademark infringement of Silikal. AcryliCon USA has the burden of proving actual damages by a preponderance of the evidence. Damages means the amount of money which will reasonably and fairly compensate AcryliCon USA for any injury you find was caused by Silikal's infringement of the trademark.

Trademark infringement damages may not be speculative. Rather, AcryliCon USA may recover upon a showing of the extent of damages as a matter of just and reasonable inference, although the result may only be an approximation.

[AcryliCon USA may recover damages for sales by Silikal of the resin "1061 SW" in containers marked and sold as "R 61 H" only if:

[(a) those sales were made to buyers other than AcryliCon USA that are located within the geographic areas of the United States in which AcryliCon USA is licensed to sell AcryliCon products; or

[(b) those sales were made to foreign buyers, but (i) Silikal is a United States corporation, and (ii) the sales had a substantial effect on United States commerce in the geographic areas of the United States in which AcryliCon is licensed to sell AcryliCon products.

[Substantial effects include: actual confusion by United States citizens; harm to AcryliCon USA's goodwill in the United States; or diversion of sales from AcryliCon USA.]

[AcryliCon USA is not permitted a double recovery of the same damages for the same wrong. AcryliCon USA is entitled only to one satisfaction of the same damages.]

The fact that I will give you instructions concerning the issue of the Plaintiff's damages should not be interpreted in any way as an indication that I believe that the Plaintiff should, or should not, prevail in this case.

## Authorities

9th Cir. Civ. Jury Instr. 18.23 (1993) [adapted]; *Int'l Cafe, S.A.L. v. Hard Rock Cafe Intern. (U.S.A.), Inc*., 252 F.3d 1274, 1278 (11th Cir. 2001); *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 918 (9th Cir. 1993); *Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1565 (11th Cir. 1987); *Marvin Nix Dev. Co. v. United Cmty. Bank*, 302 Ga. App. 566, 568 (2010) ("While a party may pursue inconsistent remedies, he is not permitted a double recovery of the same damages for the same wrong; he is entitled to only one satisfaction of the same damages, in either contract or tort.").

**Silikal's Request No. 4.9:**
**Accounting of [Revenue] ~~Profits~~ Not Automatic**

AcryliCon USA also seeks to recover the [revenue] ~~profits~~ that Silikal made on the sale of infringing products. An accounting of Silikal's [revenue] ~~profits~~ is not automatic even if trademark liability is found.

### Authorities

15 U.S.C. § 1117(a); *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 363 (11th Cir. 1997); *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1405 (9th Cir. 1993); *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 919 (Fed. Cir. 1984); ECF No. 99, Order of May 14, 2015.

### Silikal's Request No. 4.10:
### Standard for Granting an Accounting of [Revenue] ~~Profits~~

An accounting of [revenue] ~~profits~~ is only appropriate where the defendant had a purposeful intent to use the plaintiff's mark to gain the value of their established name and either

1.      the defendant's conduct is deliberate and willful;

2.      the infringer is unjustly enriched; or

3.      the sanction is necessary for future deterrence.

### Authorities

*Burger King Corp. v. Weaver*, 169 F.3d 1310, 1332 (11th Cir. 1999); *Am. Farm Bureau Fed'n v. Ala. Farmers Fed'n*, 935 F. Supp. 1533, 1551 (M.D. Ala. 1996); *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993); *Burger King Corp. v. Mason*, 855 F.2d 779, 781 (11th Cir. 1988); *Maltina Corp. v. Cawy Bottling Co., Inc.*, 613 F.2d 582, 585 (5th Cir. 1980); *Optimum Techs., Inc. v. The Home Depot U.S.A., Inc.*, 2005 WL 3307508 (N.D. Ga. Dec. 5, 2005); *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, Order and Opinion, No. 1:04-CV-1082-TWT at 16-17 (N.D. Ga. Sept. 14, 2005); ECF No. 99, Order of May 14, 2015.

**Silikal's Request No. 4.11:**
**Deliberate and Willful Intent to Infringe**

Willfulness is evidenced when the defendant is knowingly and deliberately cashing in upon the goodwill of the trademark owner. Trademark infringement that is unintentional and remedied upon notification of the improper uses of the marks is not willful or deliberate.

### Authorities

*Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993); *Howard Johnson Co. Inc. v. Khimani*, 892 F.2d 1512, 1521 (11th Cir. 1990); *Optimum Techs., Inc. v. The Home Depot U.S.A., Inc.*, 2005 WL 3307508, at *3 (N.D. Ga. Dec. 5, 2005); *Golden Door, Inc. v. Odisho*, 437 F. Supp. 956, 968 (N.D. Cal. 1977).

## Silikal's Request No. 4.12:
## Unjust Enrichment

Unjust enrichment by the defendant occurs if the defendant's sales are attributable to the infringing trademark uses by the defendant. The purpose of awarding [revenues] ~~profits~~ is to make infringement unprofitable and to deprive defendant of any unjust enrichment. The burden is on the plaintiff to prove this connection by pointing to evidence of actual consumer confusion.

### Authorities

*George Basch Co., Inc. v. Blue Coral, Inc.*, 968 F.2d 1532, 1538 (2d Cir. 1992); *Burndy Corp. v. Teledyne Indus., Inc.,* 748 F.2d 767, 772 (2d Cir. 1984); *Optimum Techs., Inc. v. The Home Depot U.S.A.*, 2005 WL 3307508, at *3 (N.D. Ga. Dec. 5, 2005); *Rainbow Play Sys., Inc. v. GroundScape Techs., LLC*, 364 F. Supp. 2d 1026, 1036 (D. Minn. 2005); *Cuisinarts, Inc. v. Robot-Coupe Int'l Corp.*, 580 F. Supp. 634, 639-40 (S.D.N.Y. 1984); ECF No. 99, Order of May 14, 2015.

**Silikal's Request No. 4.13:**
**Deterrence of Future Trademark Infringement**

An accounting of [revenue] ~~profits~~ may be awarded if it is necessary to deter a willful infringer from doing so again. A defendant's infringement must be willful to justify the use of an accounting of [revenue] ~~profits~~ as a deterrent to future infringement.

### Authorities

5 McCarthy on Trademarks & Unfair Competition § 30:59 (4th ed.); *George Basch Co., Inc. v. Blue Coral, Inc.*, 968 F.2d 1532, 1537-38 (2d Cir. 1992).

**Silikal's Request No. 4.14:**
**Accounting of [Revenues] ~~Profits~~ – Apportionment**

If an accounting of [revenue] ~~profits~~ is found to be appropriate, a trademark owner is still only entitled to [that revenue] ~~those profits~~ attributable to the unlawful use of the mark. If the infringer can prove that at least some of the [revenue] ~~profits~~ flow[s] from his own merit rather than the infringement of the registrant's mark, AcryliCon USA may not recover all of the [revenue] ~~profits~~ made by Silikal during the infringing period. AcryliCon USA must establish how long the infringing period is. [The infringing period cannot predate April 12, 2010.]

**Authorities**

*Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 349-50 (5th Cir. 2002); *Texas Pig Stands, Inc. v. Hard Rock Café Int'l*, 951 F.2d 684, 696 (5th Cir. 1992); *Novo Indus., L.P. v. Micro Molds Corp.*, 239 F. Supp. 2d 1282, 1289 (S.D. Fla. 2002); *Am. Farm Bureau Fed'n v. Ala. Farmers Fed'n*, 935 F. Supp. 1533, 1551 (M.D. Ala. 1996); ECF No. 99, Order of May 14, 2015.

**Silikal's Request No. 4.15:**
**Punitive Damages – Definition**

In tort actions, there may be aggravating circumstances that may warrant the awarding of additional or punitive damages.

In order for punitive damages to be awarded, the plaintiff must prove by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or the entire want of care which would raise the presumption of conscious indifference to the consequences. Clear and convincing evidence, an intermediate standard between a preponderance of the evidence and proof beyond a reasonable doubt, means evidence indicating a high probability.

If the plaintiff fails to prove by clear and convincing evidence, that the defendant was guilty of willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences, then you would not be authorized to make any award of punitive damages.

Mere negligence, although amounting to gross negligence, will not alone authorize a recovery of punitive damages.

Punitive damages, when authorized, are awarded not as compensation to a plaintiff, but solely to punish, penalize, or deter a defendant.

The measure of such damages is your enlightened conscience as an impartial jury.

## Authorities

Council of Superior Court Judges of Georgia, 1 *Suggested Pattern Jury Instructions* (4th ed. 2004) § 66.700, p. 321; O.C.G.A. § 51-12-5.1; *Addington v. Texas*, 441 U.S. 418, 432 (1979).

# MISAPPROPRIATION OF TRADE SECRETS
## GEORGIA TRADE SECRET ACT

## (COUNT ONE)

**Silikal's Request No. 5.1:**
**Misappropriation of Trade Secret**

In its first claim, AcryliCon USA seeks to recover damages from Silikal for Silikal's access and use of a resin formula known as "1061 SW." AcryliCon USA claims that this formula is a trade secret that it owns. Unauthorized use or disclosure of a trade secret is called misappropriation of a trade secret.

The issues for your determination on this claim are:

- Whether the resin formula known as 1061 SW is a trade secret owned by AcryliCon USA;

- If so, whether Silikal misappropriated this trade secret from AcryliCon USA;

- If so, whether such misappropriation unjustly enriched Silikal.

If the preponderance of the evidence does not support AcryliCon USA's claim for misappropriation of trade secrets, then your verdict should be for Silikal on this claim.

I will now explain each of these issues.

**Authorities**

Scott Palmer, *et al.*, FLA. FORMS OF JURY INSTR., § 65.110 (LexisNexis 2d ed. 2015); Fla. Std. Jury Instr. (Civ.) 408.5 [modified to fit the facts and claims at issue]; *Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1360 (S.D. Fla. 2012);

*Premier Lab Supply, Inc. v. Chemplex Indus., Inc.*, 10 So. 3d 202, 205 (Fla. 4th DCA 2009); *In re Maxxim Med. Grp., Inc.*, 434 B.R. 660, 690-92 (Bankr. M.D. Fla. 2010); *Sepro Corp. v. Fla. Dep't of Envt'l Prot.*, 839 So. 2d 781, 783-84 (Fla. 1st DCA 2003); *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001).

**Silikal's Request No. 5.2:**
**Trade Secret**

You must determine on AcryliCon USA's claim against Silikal for misappropriation of trade secrets whether the resin formula known as "1061 SW" is a trade secret [of AcryliCon USA]. "Trade secret" means information, without regard to form, including, but not limited to, technical or nontechnical data, a formula, a pattern, a compilation, a program, a device, a method, a technique, a drawing, a process, financial data, financial plans, product plans, or a list of actual or potential customers or suppliers which is not commonly known by or available to the public and which information:

- Derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

- Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

**Authorities**

O.C.G.A. § 10-1-761(4) (2015).

**Silikal's Request No. 5.3:**
**Misappropriation**

If you find that the resin formula known as "1061 SW" is a trade secret [of AcryliCon USA], you must determine whether Silikal misappropriated it. "Misappropriation" means:

1.      Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

2.      Disclosure or use of a trade secret of another without express or implied consent by a person who:

      a.      Used improper means to acquire knowledge of a trade secret;

      b.      At the time of disclosure or use, knew or had reason to know that knowledge of the trade secret was:

- Derived from or through a person who had utilized improper means to acquire it;

- Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

- Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

      c.       Before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

## Authorities

O.C.G.A. § 10-1-761(2).

**Silikal's Request No. 5.4:**
**Damages**

Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. If neither damages nor unjust enrichment caused by the misappropriation are proved by a preponderance of the evidence, the court may award damages caused by misappropriation measured in terms of a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret for no longer than the period of time for which use could have been prohibited.

**Authorities**

O.C.G.A. § 10-1-763.

**Silikal's Request No. 5.5:**
**Unjust Enrichment**

"Unjust enrichment" occurs if Silikal receives a benefit to which it is not entitled. Damages for unjust enrichment may only be awarded where it can be determined to a reasonable certainty that the misappropriator realized a gain.

**Authorities**

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 10.1; *White v. Arthur Enterprises, Inc.,* 219 Ga. App. 124, 124 (1995) (citing *Phoenix Airline Svcs. v. Metro Airlines,* 194 Ga. App. 120, 125-26 (1989), *rev'd on other grounds,* 260 Ga. 584 (1990)).

**Silikal's Request No. 5.6:**
**Misappropriation of Trade Secrets – Damages – Royalty**

I charge you, members of the jury, that reasonable royalty means the actual value of what has been appropriated. When the value cannot be exactly determined, a reasonable estimate is permissible based upon what the parties would have agreed to as a fair price for licensing the misappropriator to use the trade secret at the time the secret was misappropriated.

**Authorities**

*University Computing Co. v. Lykes-Youngstown Corp,* 504 F.2d 518, 537 (5th Cir. 1974).

## Silikal's Request No. 5.7:
## Willfulness

If you find that the resin formula known as "1061 SW" was a trade secret [of AcryliCon USA] that Silikal misappropriated, and that Silikal was unjustly enriched as a result, and if you also find that Silikal's conduct was willful,[3] then I may award additional damages.

A defendant's conduct is willful if that defendant knowingly and purposefully capitalizes on and appropriates the goodwill of a plaintiff.

## Authorities

O.C.G.A. §§ 10-1-763(b), 10-1-764.

---

[3]  Punitive damages are not for the jury. O.C.G.A. § 10-1-763(b) ("If willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subsection (a) of this Code section.").

Attorneys' fees awards are likewise the province of the judge. O.C.G.A. § 10-1-764 ("If a claim of misappropriation is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or willful and malicious misappropriation exists, the court may award reasonable attorneys' fees to the prevailing party.").

Both of these types of awards require a finding of willfulness.

**Silikal's Request No. 5.8:**
**Bad Faith**

If you find that AcryliCon USA brought its claim for misappropriation of trade

secrets against Silikal in bad faith, then I may award attorneys' fees to Silikal.

**Authorities**

O.C.G.A. § 10-1-764.

# LANHAM ACT, 15 U.S.C. § 1125
## AND INFRINGEMENT OF COMMON LAW TRADEMARK RIGHTS

## (COUNT TWO)

**Silikal's Request No. 10.1.1:**
**Trademark Infringement – Registered Trademark**

AcryliCon USA claims that Silikal has infringed its registered trademark[s]. To prove its claim, AcryliCon USA must prove the following facts by a preponderance of the evidence:

1.      AcryliCon USA owns a~~ ~~trademark[s] that ~~is~~ [are] entitled to protection; and

2.      That Silikal is using a mark that infringes upon AcryliCon USA's trademark[s].

You must first find that AcryliCon USA owns a~~ ~~federal registration of the trademark[s] at issue in this case. To do this, you must find that the trademark[s] ~~is~~ [are] covered by a~~ ~~registration on the Principal Register of the U.S. Patent and Trademark Office. If you do not find that AcryliCon USA owns a federal registration, then you must determine whether AcryliCon USA owns a trademark that is entitled to protection. [If it is disputed whether AcryliCon USA has a~~ ~~registered trademark[s], the unregistered trademark instructions also should be given. [*See* Silikal's Request Nos. 10.2.1 through 10.2.8 *infra*.]]

If you find AcryliCon USA's trademark[s] ~~is~~ [are] covered by a~~ ~~federal registration, AcryliCon USA enjoys what is known as "constructive nationwide priority" in its trademark[s], whether or not AcryliCon USA uses the trademark[s]

on a nationwide basis. AcryliCon USA is presumed to have started using the trademark[s] nationwide as of ~~its~~ [their] filing date, even if it only used ~~it~~ [them] in a limited area. In this case, AcryliCon USA enjoys nationwide priority of rights dating back to the filing date[s] of the application[s], which ~~is~~ [are] [August 10, 1999 and April 11, 2008].

Because AcryliCon USA owns ~~a~~ federal registration[s] of the trademark[s], Silikal is deemed to have knowledge of the registration[s] and of the rights claimed in the registration[s]. This is known as "constructive notice," and Silikal cannot claim that it adopted its trademark without knowledge of AcryliCon USA's trademark[s]. In this case, AcryliCon USA enjoys nationwide constructive notice of rights dating back to the filing date[s] of the application[s], which ~~is~~ [are] [August 10, 1999 and April 11, 2008].

### Authorities

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 10.1.

**Silikal's Request No. 10.1.2:**
**Infringement – Introductory Jury Charge [Registered Trademark]**

If you have determined that AcryliCon USA owns a trademark that is entitled to protection, you must next consider whether Silikal infringed AcryliCon USA's trademark. The test for infringement is whether Silikal's trademark is "likely to cause confusion" with AcryliCon USA's trademark.

That is, you must determine if Silikal, without AcryliCon USA's consent, used the same or a similar trademark in connection with the sale of, or the offer to sell, goods in a manner that is likely to cause confusion among consumers as to the source, affiliation, approval, or sponsorship of the goods. "Source," "origin," "affiliation," "approval," or "sponsorship" means that the public believes that Silikal's goods come from, are affiliated with, are approved by, or sponsored by AcryliCon USA.

It is not necessary that the trademark used by Silikal be an exact copy of AcryliCon USA's trademark. Instead, AcryliCon USA must demonstrate, by a preponderance of the evidence, that Silikal's use of its trademark is, when viewed in its entirety, likely to cause confusion as to the source, origin, affiliation, approval, or sponsorship of the goods in question.

**Authorities**

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 10.1.

**Silikal's Request No. 10.1.3:**
**Infringement [Registered Trademark]**

AcryliCon USA claims that Silikal has infringed its trademark. For AcryliCon USA to succeed on this claim you must find by a preponderance of the evidence that Silikal:

1.      used the trademark in connection with the sale or offer to sell goods;

2.      used the trademark in commerce; and,

3.      used the trademark in a manner that is likely to:

      a.      cause confusion, mistake, or deception as to

      b.      the source, origin, affiliation, approval, or sponsorship of Silikal's goods.

### Authorities

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 10.1.

**Silikal's Request No. 10.1.4:**
**Infringement: Likelihood of Confusion (Seven-Factor Test)**
**[Registered Trademark]**

There are seven factors you can use to determine whether a likelihood of confusion exists. No single factor or consideration controls, and AcryliCon USA is not required to prove all, or even most, of the factors are present in any particular case. You may also use factors other than these seven. You should weigh all of the relevant evidence in determining whether a likelihood of confusion exists.

## 1.      Type and Strength of AcryliCon USA's Trademark

The first factor is the "type and strength" of the trademark. Trademarks come in different "types" or categories, namely, "generic," "descriptive," "suggestive," "arbitrary," and "fanciful" or "coined." The type of a claimed trademark is relevant to the trademark's strength.

Some trademarks are stronger than others. The "stronger" the trademark, the more protection should be given to it. I will now describe each type of trademark in the order of their general relative strength.

### a.      Generic:

A claimed trademark is generic if it is the word, name, symbol, device, or any combination thereof, by which the good commonly is known. An example of a generic trademark is "escalator" for moving stairs.

Whether a claimed trademark is generic does not depend on the term itself, but on use of the term. A word may be generic of some things but not of others. For example, "ivory" is generic for elephant tusks, but it is not generic for soap.

Whether a claimed trademark is a generic term is viewed from the perspective of a member of the public evaluating the trademark.

Generic trademarks are not protected. They cannot be registered with the U.S. Patent and Trademark Office.

### b.    Descriptive:

A "descriptive" trademark only describes an ingredient, quality, characteristic, function, feature, purpose, or use of the good provided under it. An example of a descriptive trademark would be Vision Center for an eyeglasses store. Descriptive trademarks are eligible for registration with the U.S. Patent and Trademark Office if the trademark has acquired "secondary meaning." A trademark has acquired secondary meaning if the primary significance of the trademark in the minds of the consuming public is not the associated good itself, but instead the source or producer of the good.

There are four factors you may use in determining whether secondary meaning exists:

- The length and nature of the trademark's use;

- The nature and extent of advertising and promotion of the trademark;

- The efforts of the trademark owner to promote a conscious connection between the trademark and its business; and

- The degree to which the public recognizes AcryliCon USA's good by the trademark.

[This instruction should be used if AcryliCon USA's trademark registration has not achieved incontestable status under 15 U.S.C. § 1065:

In this case, I have determined that this trademark is registered on the Principal Register and that it is at least descriptive with secondary meaning. Therefore Silikal has the burden of proving by a preponderance of the evidence that the trademark is invalid because it was descriptive but lacked secondary meaning before Silikal began using its trademark.]

### c.    Suggestive:

A "suggestive" trademark suggests, rather than describes, qualities of the underlying good. If a consumer's imagination is necessary to make the connection between the trademark and the goods then the trademark suggests the features of the good. An example of a suggestive trademark is Iceberg for a refrigerator. Suggestive trademarks are eligible to be registered in the U.S. Patent and Trademark Office without proof of secondary meaning.

### d.   Arbitrary and Fanciful or Coined:

An "arbitrary" trademark is a real word but has no logical relationship to the underlying goods. An example of an arbitrary trademark is Domino for sugar.

A "fanciful" or "coined" trademark is a trademark created solely to function as a trademark but which has no meaning beyond the trademark itself. An example of a fanciful or coined trademark is Exxon for gasoline.

Arbitrary and fanciful or coined trademarks are eligible to be registered in the U.S. Patent and Trademark Office without proof of secondary meaning.

### e.   Additional Considerations Relating To Trademark Strength:

When evaluating the strength of AcryliCon USA's trademark, you may also consider the extent of any use by third parties of similar trademarks, AcryliCon USA's promotional expenditures, the volume of AcryliCon USA's sales under its trademark, and whether AcryliCon USA's registration has achieved incontestable status.

### 2.   Similarity of the Parties' Trademarks

In evaluating whether trademarks are similar, you may consider the "overall impression" that AcryliCon USA's and Silikal's trademarks create, including the sound, appearance, and manner in which they are used. You may look at the trademarks as a whole rather than simply comparing their individual features.

### 3.     Similarity of the Parties' Goods

This factor considers not only whether the consuming public can readily distinguish between the parties' goods, but also whether the goods at issue are of a kind that the public attributes to a single source.

### 4.     Similarity of the Parties' Sales Channels, Distribution, and Customers

This factor considers where, how, and to whom the parties' goods are sold. Similarities increase the possibility of consumer confusion, mistake, or deception.

### 5.     Similarity of the Parties' Advertising Media

This factor looks to each party's method of advertising. It is not a requirement that AcryliCon USA and Silikal advertise in the same magazines, publications, or other advertising outlets. The issue is whether the parties use the same forums and media outlets to advertise, leading to possible confusion.

### 6.     Silikal's Intent

You may also consider whether Silikal intended to infringe on AcryliCon USA's trademark. That is, did Silikal adopt its trademark with the intention of deriving a benefit from AcryliCon USA's reputation? If you determine that Silikal intentionally ignored the potential for infringement, you may impute to Silikal an intent to infringe.

**7.    Actual Confusion**

Because the presence of actual confusion usually is difficult to show, a finding of actual confusion is not required to find trademark infringement. Alternatively, the absence of actual confusion does not necessarily mean Silikal is not liable for trademark infringement.

The evidence of actual confusion of trademarks should be reasonably significant. You should weigh the alleged actual confusion using the following factors:

- The amount and duration of the confusion;

- The degree of familiarity the confused party has with the goods;

- The type of person complaining of the alleged actual confusion (for example, whether that person is a customer or a noncustomer); and

- The alleged number of people who are actually confused (for example, whether the confused person is an actual customer or someone else).

If you find that Silikal has infringed AcryliCon USA's trademark, you must next consider Silikal's affirmative defenses.

**Authorities**

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 10.1.

**Silikal's Request No. 10.1.5:**
**Trademarks: Remedies [Registered Trademark]**

If you find that AcryliCon USA owns a valid trademark, that Silikal has infringed it, and Silikal does not have a defense you must consider whether, and to what extent, monetary relief should be awarded.

**Authorities**

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 10.1.

**Silikal's Request No. 10.1.6:**
**Plaintiff's Actual Monetary Damages [Registered Trademark]**

You may award actual damages that AcryliCon USA has sustained. AcryliCon USA may recover the economic injury to its business proximately resulting from Silikal's wrongful acts. You are not required to calculate actual damages with absolute exactness—you may make reasonable approximations. But an award of actual damages to AcryliCon USA must be just and reasonable, based on facts, and proved by AcryliCon USA by a preponderance of the evidence.

**Authorities**

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 10.1.

### Silikal's Request No. 10.1.7:
### Defendant's Profits and Calculation of [Revenue] ~~Profits~~ [Registered Trademark]

In addition to AcryliCon USA's actual damages, you may also make an award based on an accounting of Silikal's [revenues] ~~profits~~ if you find that:

- Silikal's conduct was willful and deliberate;

- Silikal was unjustly enriched; or

- An award of Silikal's [revenues] ~~profits~~ is necessary to deter Silikal's future conduct.

A defendant commits a "willful violation" of a trademark when that defendant knowingly and purposefully capitalizes on and appropriates the goodwill of a plaintiff.

"Unjust enrichment" occurs if Silikal receives a benefit to which it is not entitled.

In determining Silikal's [revenue] ~~profits~~, AcryliCon USA only is required to prove Silikal's gross sales. Silikal may then prove the amount of sales made for reasons other than the infringement. ~~Silikal also may prove its costs or other deductions which it claims should be subtracted from the amount of its sales to determine its profits on such sales. Any costs or deductions that Silikal proves by a preponderance of the evidence are required to be subtracted from the sales~~

~~attributable to the infringement and the difference is the amount that may be awarded~~

~~to AcryliCon USA.~~

### Authorities

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 10.1; ECF No. 99, Order of May 14, 2015.

**Silikal's Request No. 10.1.8:**
**Nominal Damages [Registered Trademark]**

If you find that Silikal infringed AcryliCon USA's trademark, but you do not find that AcryliCon USA sustained any actual damages or damages based on Silikal's [revenues] ~~profits~~, you may return a verdict for AcryliCon USA and award what are called "nominal" damages. By "nominal" I mean a small amount of damages that you, in your discretion, determine.

### Authorities

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 10.1; ECF No. 99, Order of May 14, 2015.

**Silikal's Request No. 10.2.1:**
**Trademark Infringement – Unregistered Trademark**

AcryliCon USA claims that Silikal has infringed its trademark[s]. To prove its claim, AcryliCon USA must prove the following facts by a preponderance of the evidence:

1.      AcryliCon USA owns ~~a~~ trademark[s] that ~~is~~ [are] entitled to protection; and

2.      Silikal is using a trademark that infringes AcryliCon USA's trademark[s].

**Validity**

You must first find that AcryliCon USA owns protectable rights to a trademark. AcryliCon USA must prove by a preponderance of the evidence that the trademark is:

1.      Used in commerce;

2.      Distinctive; and

3.      Nonfunctional.

**Used in Commerce**

The right to a particular trademark grows out of the trademark's use. Use is sufficient to establish rights if it is public enough that it identifies the goods in question as those of the person using the trademark. It is sufficient to establish valid

rights if the trademark is used in genuine transactions in commerce and the use is consistent and continuous. Mere "token use" of the trademark—use made solely to reserve rights in the trademark—is not enough to establish valid rights. Wide public recognition of the trademark is not required, but secret or undisclosed use is not adequate.

A trademark is used in commerce and in connection with goods when it is placed on:

- the goods or their containers or the associated displays,

- the tags or labels axed to the goods or their containers, or

- the documents associated with the goods or their sale, and

- the goods are sold or transported in commerce in more than one state, or in the United States and a foreign country.

[The following instruction should be given in cases in which the parties claim prior rights in particular geographic areas:

AcryliCon USA's rights are ordinarily limited to the places that it actually uses the trademark. Therefore, it is possible for another party to gain rights to the same or a similar trademark in a different geographic area.

There are two exceptions to this rule. First, AcryliCon USA's rights may reach beyond the geographic areas where it uses the trademark into its zone of natural

expansion. In other words, AcryliCon USA's trademark rights can extend to places where it is probable that AcryliCon USA would have expanded use of the trademark.

Second, AcryliCon USA's rights may extend to places where it does not use the trademark, but where Silikal adopted and used the trademark with a bad-faith intent to violate AcryliCon USA's rights. Mere knowledge of AcryliCon USA's rights is insufficient to trigger this exception. Silikal must have intended to violate AcryliCon USA's rights.]

### Distinctiveness

For AcryliCon USA to have a protectable trademark, the trademark must be distinctive. In other words, the trademark must be recognized in its market as a trademark. To be distinctive, a trademark can either:

- Be inherently distinctive; or

- Have acquired distinctiveness.

You must look at the trademark as a whole when evaluating the distinctiveness or lack of distinctiveness.

### Acquired Distinctiveness

A trademark is protectable if it has "acquired distinctiveness," also known as "secondary meaning." A claimed trademark has acquired secondary meaning if the primary significance of the trademark in the minds of the consuming public is not

the associated good itself, but instead the source or producer of the good. There are four factors you may use in determining secondary meaning:

- The length and nature of the trademark's use;

- The nature and extent of advertising and promotion of the trademark;

- The efforts of the trademark's owner to promote a conscious connection between the trademark and its business; and

- The degree to which the public recognizes the good by the trademark.

**Inherent Distinctiveness**

A trademark also is protectable if it is inherently distinctive. To determine whether a claimed trademark is inherently distinctive, you must first place it into one of four "types" or categories. Trademarks come in different "types" or categories, namely: "generic," "descriptive," "suggestive," "arbitrary," and "fanciful" or "coined." The type of trademark is relevant to the trademark's strength.

I will now describe each type of trademark in the order of their general relative strength:

### a.    Generic:

A claimed trademark is generic if it is the word, name, symbol, or device, or any combination thereof, by which the good is known. An example of a generic trademark is "escalator" for moving stairs.

Whether a claimed trademark is generic does not depend on the term itself, but on use of the term. A word may be generic of some things but not of others. For example, "ivory" is generic for elephant tusks, but it is not generic for soap.

Whether a claimed trademark is generic is viewed from the perspective of a member of the relevant public evaluating the trademark.

Generic trademarks are not protected and cannot be registered with the U.S. Patent and Trademark Office.

### b.    Descriptive:

A claimed trademark is "descriptive" if it merely describes an ingredient, quality, characteristic, function, feature, purpose, or use of the good. An example of a descriptive trademark would be Vision Center for an eyeglasses store.

Descriptive trademarks are eligible for protection if they have acquired "secondary meaning." I previously instructed you on how to determine if a claimed trademark has acquired secondary meaning.

### c.    Suggestive:

A "suggestive" trademark suggests, rather than describes, qualities of the underlying good. If a consumer's imagination is necessary to make the connection between the trademark and the goods, then the trademark suggests the features of the goods. An example of a suggestive trademark is Iceberg for a refrigerator.

Suggestive trademarks are eligible for protection without proof of secondary meaning.

### d.     Arbitrary and Fanciful or Coined:

An "arbitrary" trademark is a trademark that is a real word but has no logical relationship to the underlying goods. An example of an arbitrary trademark is Domino for sugar.

A "fanciful" or "coined" trademark is a trademark created solely to function as a trademark but which has no meaning beyond the trademark itself. An example of a fanciful or coined trademark is Exxon for gasoline.

Arbitrary and fanciful or coined trademarks are eligible for protection without proof of secondary meaning.

### Nonfunctionality

The third element that AcryliCon USA must prove is that the trademark is primarily nonfunctional. A claimed trademark is functional if it is essential to the use or purpose of the good, or if it affects the good's cost or quality. In other words, if allowing AcryliCon USA to have exclusive use of the trademark would put competitors at a disadvantage that does not relate to AcryliCon USA's reputation, then the trademark may be functional. For example, a trademark for the color of ice

cream—such as white for vanilla, pink for strawberry, and brown for chocolate—would be functional if the color identifies the flavor of the ice cream.

In evaluating nonfunctionality, you must keep in mind that a claimed trademark may be primarily nonfunctional even if it serves a practical purpose. The fact that individual components of a claimed trademark are functional does not prevent the overall combination of those elements from being primarily nonfunctional. Nevertheless, individually functional elements are not valid merely because they are part of an overall nonfunctional trademark.

### Authorities

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 10.2.

**Silikal's Request No. 10.2.2:**
**Infringement – Introductory Infringement Jury Charge**
**[Unregistered Trademark]**

If you have determined that AcryliCon USA's trademark is entitled to protection, you must next consider whether Silikal infringed AcryliCon USA's trademark. The test for infringement is whether Silikal's trademark is "likely to cause confusion" with AcryliCon USA's trademark.

That is, you must determine if Silikal, without AcryliCon USA's consent, used the same or a similar trademark in connection with the sale of, or the offer to sell, goods in a manner that is likely to cause confusion among consumers as to the source, affiliation, approval, or sponsorship of the goods. "Source," "origin," "affiliation," "approval," or "sponsorship" means that the public believes that Silikal's goods come from, are affiliated with, are approved by, or sponsored by AcryliCon USA.

It is not necessary that the trademark used by Silikal be an exact copy of AcryliCon USA's trademark. Rather, AcryliCon USA must demonstrate, by a preponderance of the evidence, that Silikal's use of its trademark is, when viewed in its entirety, likely to cause confusion as to the source, origin, affiliation, approval, or sponsorship of the goods in question.

**Authorities**

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 10.2.

**Silikal's Request No. 10.2.3:**
**Infringement [Unregistered Trademark]**

AcryliCon USA claims that Silikal has infringed its trademark. For AcryliCon USA to succeed on this claim you must find by a preponderance of the evidence that Silikal:

1.      Used the trademark in connection with the sale or offer to sell goods;

2.      Used the trademark in commerce; and,

3.      Used the trademark in a manner that is likely to:

      a.      cause confusion mistake, or deception as to

      b.      the source, origin, affiliation, approval, or sponsorship of Silikal's goods.

### Authorities

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 10.2.

**Silikal's Request No. 10.2.4:**
**Infringement: Likelihood of Confusion (Seven-Factor Test)**
**[Unregistered Trademark]**

There are seven factors you can use to determine whether a likelihood of confusion exists. No single factor or consideration controls, and AcryliCon USA is not required to prove that all, or even most, of the factors are present in any particular case. You also may use factors other than these seven. You should weigh all of the relevant evidence in determining whether a likelihood of confusion exists.

### 1.    Type and Strength of AcryliCon USA's Trademark

The first factor is the "type and strength" of the trademark. Some trademarks are stronger than others. The "stronger" the trademark, the more protection should be given to it.

I previously have instructed you as to the four "types" or categories of trademarks, namely, "generic," "descriptive," "suggestive," "descriptive," "arbitrary," and "fanciful" or "coined." The type of a claimed trademark is relevant to the trademark's strength. When evaluating the strength of AcryliCon USA's trademark, you also may consider the extent of any use by third parties of similar trademarks, AcryliCon USA's promotional expenditures, and the volume of AcryliCon USA's sales under its trademark.

### 2.      Similarity of the Parties' Trademarks

In evaluating whether trademarks are similar, you may consider the "overall impression" that AcryliCon USA's and Silikal's trademarks create, including the sound, appearance, and manner in which they are used. You may look at the trademarks as a whole rather than simply comparing their individual features.

### 3.      Similarity of the Parties' Goods

This factor considers not only whether the consuming public can readily distinguish between the parties' goods, but also whether the goods at issue are of a kind that the public attributes to a single source.

### 4.      Similarity of the Parties' Sales Channels, Distribution, and Customers

This factor considers where, how, and to whom the parties' goods are sold. Similarities increase the possibility of consumer confusion, mistake, or deception.

### 5.      Similarity of the Parties' Advertising Media

This factor looks to each party's method of advertising. It is not a requirement that AcryliCon USA and Silikal advertise in the same magazines, publications, or other advertising outlets. The issue is whether the parties use the same forums and media outlets to advertise, leading to possible confusion.

### 6.  Silikal's Intent

You also may consider whether Silikal intended to infringe on AcryliCon USA's trademark. That is, did Silikal adopt its trademark with the intention of deriving a benefit from AcryliCon USA's reputation? If you determine that Silikal intentionally ignored potential infringement, you may impute to Silikal an intent to infringe.

### 7.  Actual Confusion

Because the presence of actual confusion usually is difficult to show, a finding of actual confusion is not required to find trademark infringement. Alternatively, the absence of actual confusion does not necessarily mean Silikal is not liable for trademark infringement.

The evidence of actual confusion of trademarks should be reasonably significant. You should weigh the alleged actual confusion, using the following factors:

- The amount and duration of the confusion;

- The degree of familiarity the customer has with the goods;

- The type of person complaining of the alleged actual confusion (for example, whether that person is a customer or a noncustomer); and

- The alleged number of people who are actually confused (for example, whether the confused person is an actual customer or someone else).

If you find that Silikal has infringed AcryliCon USA's trademark, you must next consider Silikal's affirmative defenses. [*See* Silikal's Request No. 10.5.2, *infra*]

[The following instruction should be given in cases in which plaintiff claims third party "contributory infringement" for an underlying claim of infringement.

AcryliCon USA claims that Silikal is liable for the "contributory infringement" of AcryliCon USA's trademark. "Contributory infringement" occurs when a defendant intentionally induces or causes another party to infringe a plaintiff's trademark. If this occurs, Silikal can be held liable for other party's infringement.]

### Authorities

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 10.2.

**Silikal's Request No. 10.2.5:**
**Remedies [Unregistered Trademark]**

If you find that AcryliCon USA's trademark is valid, that Silikal has infringed

it, and Silikal does not have a defense to the infringement, you must determine

whether and to what extent, money damages should be awarded.

**Authorities**

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 10.2.

**Silikal's Request No. 10.2.6:**
**Plaintiff's Actual Monetary Damages [Unregistered Trademark]**

You may award actual damages AcryliCon USA has sustained. AcryliCon USA may recover the economic injury to its business proximately resulting from Silikal's wrongful acts. You are not required to calculate actual damages with absolute exactness—you may make reasonable approximations. However, any award of actual damages to AcryliCon USA must be just and reasonable, based on facts, and proved by AcryliCon USA by a preponderance of the evidence.

### Authorities

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 10.2.

### Silikal's Request No. 10.2.7:
### Defendant's [Revenue] ~~Profits~~ and Calculation of [Revenue] ~~Profits~~ [Unregistered Trademark]

In addition to AcryliCon USA's actual damages, you may also make an award based on an accounting of Silikal's [revenues] ~~profits~~ if you find that:

- Silikal's conduct was willful and deliberate;

- Silikal was unjustly enriched; or,

- An award of Silikal's [revenues] ~~profits~~ is necessary to deter Silikal's future conduct.

A defendant commits a "willful violation" of a trademark when that defendant knowingly and purposefully capitalizes on and appropriates for itself the goodwill of a plaintiff.

"Unjust enrichment" occurs if Silikal receives a benefit to which it is not entitled.

In determining Silikal's [revenues] ~~profits~~, AcryliCon USA only is required to prove Silikal's gross sales. Silikal may then prove the amount of sales made for reasons other than the infringement. ~~Silikal also may prove its costs or other deductions which it claims should be subtracted from the amount of its sales to determine its profits on such sales. Any costs or deductions that Silikal proves by a preponderance of the evidence are required to be subtracted from the sales~~

~~attributable to the infringement, and the difference is the amount that may be awarded to AcryliCon USA.~~

### Authorities

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 10.2; ECF No. 99, Order of May 14, 2015.

**Silikal's Request No. 10.2.8:**
**Nominal Damages [Unregistered Trademark]**

If you find that Silikal infringed AcryliCon USA's trademark, but you do not find that AcryliCon USA sustained any actual damages or damages based on Silikal's [revenues] ~~profits~~, you may return a verdict for AcryliCon USA and award what are called "nominal" damages. By "nominal" I mean a small amount of damages that you, in your discretion, determine.

**Authorities**

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 10.2; ECF No. 99, Order of May 14, 2015.

## Silikal's Request No. 10.3:
## Defenses to Claim of Infringement of a Trademark

AcryliCon USA has shown a likelihood of confusion, but Silikal claims that Silikal is not liable to AcryliCon USA for trademark infringement, because one or more of the following defenses exist. Silikal has the burden of proving [it] defense[s] to trademark infringement by a preponderance of the evidence.

[The following instruction should be given in cases in which defendant claims that the use of plaintiff's trademark is a nominative fair use:

Nominative fair use is a defense to a claim of trademark infringement. Under this defense, Silikal may use AcryliCon USA's trademark to refer to AcryliCon USA's goods, but Silikal may not use AcryliCon USA's trademark to refer to Silikal's own goods. You must find that Silikal's use of the trademark was not infringing if Silikal proves by a preponderance of the evidence that its use of AcryliCon USA's trademark meets the following elements:

- AcryliCon USA's trademark is the only name, term, or symbol reasonably available to describe Silikal's goods;

- Silikal does not attempt to capitalize on consumer confusion or to appropriate the prestige of AcryliCon USA's trademark; and

- Silikal's use of AcryliCon USA's trademark does not identify AcryliCon USA as the source of Silikal's goods.]

[The following instruction should be given in cases in which defendant claims that its use of plaintiff's trademark is descriptive fair use:

Descriptive fair use is a defense to a claim of trademark infringement. Silikal is not liable for infringement if it proves by a preponderance of the evidence that its use of AcryliCon USA's trademark is necessary to accurately describe a characteristic of its goods. To establish this defense, Silikal must prove that AcryliCon USA's trademark is used:

- Other than as a trademark;

- In a descriptive sense; and

- Fairly and in good faith—that is, Silikal did not intend to trade on the goodwill of AcryliCon USA by creating confusion as to the source of Silikal's goods.]

### Authorities

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 10.3.

**Silikal's Request No. 10.5.1:**
**Trademark Dilution**

AcryliCon USA claims that Silikal's use is likely to dilute the distinctiveness of AcryliCon USA's trademark. To prove its claim of likely dilution, AcryliCon USA must prove the following facts by a preponderance of the evidence:

- AcryliCon USA's trademark is famous and distinctive, either inherently or through acquired distinctiveness;

- Silikal's use of its trademark began after AcryliCon USA's trademark became famous; and

- Silikal's use of its trademark is likely to cause [dilution by blurring/dilution by tarnishment] of AcryliCon USA's famous trademark.

To prevail on a claim for likely dilution of its trademark, AcryliCon USA must prove by a preponderance of the evidence that its trademark was "famous" at the time of Silikal's first use of Silikal's trademark. A claimed trademark is "famous" if it is widely recognized by the general consuming public of the United States as the designation of the source of the owner's goods.

In considering whether AcryliCon USA's trademark is "famous," you may consider all relevant factors, including the following:

- The duration, extent, and geographic reach of advertising and publicity of the trademark, whether advertised or publicized by AcryliCon USA or third parties;

- The amount, volume, and geographic extent of sales of goods offered under AcryliCon USA's trademark;

- The extent of actual recognition of AcryliCon USA's trademark; and

- Whether AcryliCon USA's trademark was registered on the Principal Register of the United States Patent and Trademark Office.

[The following instruction should be given when plaintiff is claiming that defendant's use is likely to cause dilution by blurring:

AcryliCon USA claims that Silikal's use of its trademark is likely to blur AcryliCon USA's trademark. Likelihood of dilution by blurring occurs when the similarity between Silikal's trademark and AcryliCon USA's famous trademark impairs the distinctiveness of the famous trademark. In determining whether Silikal's trademark is likely to blur the distinctiveness of AcryliCon USA's trademark you may consider all relevant factors, including the following:

- The degree of similarity between Silikal's trademark and AcryliCon USA's trademark;

- The degree of inherent or acquired distinctiveness of AcryliCon USA's trademark;

- The extent to which AcryliCon USA is engaging in substantially exclusive use of its trademark;

- The degree of recognition of AcryliCon USA's trademark;

- Whether Silikal intended to create an association with AcryliCon USA's trademark; and

- Any actual association between Silikal's trademark and AcryliCon USA's trademark.

AcryliCon USA is not required to prove actual or likely confusion or actual economic injury to prove that blurring is likely.]

[The following instruction should be given when AcryliCon USA is claiming that Silikal's use is likely to cause dilution by tarnishment:

AcryliCon USA claims that Silikal's use of its trademark is likely to tarnish AcryliCon USA's trademark. Dilution by tarnishment occurs when a claimed trademark harms the reputation of a famous trademark. AcryliCon USA is not required to prove actual or likely confusion or actual economic injury to prove that tarnishment is likely. AcryliCon USA only needs to prove likely dilution by tarnishment to recover on its dilution claim.]

**Authorities**

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 10.5.

## Silikal's Request No. 10.5.2:
## Affirmative Defenses [Dilution]

There are defenses to a claim of likely dilution [by blurring/by tarnishment]. If Silikal proves by a preponderance of the evidence that the use of its trademark was [a fair use/in news reporting or commentary/non-commercial use], then Silikal has not engaged in trademark dilution.

"Fair use" includes a nominative or descriptive fair use, or facilitation of such fair use, of AcryliCon USA's trademark by Silikal other than as a designation of source for Silikal's own goods. Such fair use includes use of Silikal's trademark in connection with:

- Advertising or promotions that permit consumers to compare AcryliCon USA and Silikal's goods; or

- Silikal's identifying and parodying, criticizing, or commenting upon AcryliCon USA or the goods of AcryliCon USA; or

- All forms of news reporting and news commentary; or

- Any non-commercial use of a trademark.

### Authorities

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 10.5.

**Silikal's Request No. 10.5.3:**
**Remedies [Dilution]**

If you find that Silikal's use is likely to dilute AcryliCon USA's trademark, and Silikal does not have a defense to the likely dilution, you must consider whether, and to what extent, monetary relief should be awarded. You may award AcryliCon USA monetary relief if:

- Silikal's trademark was first used after October 6, 2006; and

- Silikal's conduct was willful.

**Authorities**

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 10.5.

**Silikal's Request No. 10.5.4:**
**Plaintiff's Actual Monetary Damages [Dilution]**

You may award actual damages that AcryliCon USA has sustained as a result of Silikal's willful violation of AcryliCon USA's trademark rights. AcryliCon USA may recover the economic injury to its business proximately resulting from Silikal's wrongful acts. You are not required to calculate actual damages with absolute exactness—you may make reasonable approximations. But any award of actual damages to AcryliCon USA must be just and reasonable, based on facts, and proved by AcryliCon USA by a preponderance of the evidence.

### Authorities

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 10.5.

**Silikal's Request No. 10.5.5:**
**Defendant's [Revenues] ~~Profits~~ and Calculation of [Revenue] ~~Profits~~**
**[Dilution]**

Alternatively, you may make an award based on an accounting of Silikal's [revenues] ~~profits~~ as a result of Silikal's willful violation of AcryliCon USA's trademark rights. A defendant commits a "willful violation" of a trademark when that defendant knowingly and purposefully capitalized on and appropriated for itself the goodwill of a plaintiff.

In determining Silikal's [revenues] ~~profits~~, AcryliCon USA is only required to prove Silikal's gross sales. Silikal may then prove the amount of sales made for reasons other than the infringement. ~~Silikal also may prove its costs or other deductions which it claims should be subtracted from the amount of its sales to determine its profits on such sales. Any costs or deductions that Silikal proves, by a preponderance of the evidence, are required to be subtracted from the sales attributable to the infringement and the difference is the amount that may be awarded to AcryliCon USA.~~

**Authorities**

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 10.5; ECF No. 99, Order of May 14, 2015.

**Silikal's Request No. 10.6.1:**
**Trademark Counterfeiting**

AcryliCon USA claims that Silikal has committed counterfeiting by unlawfully using AcryliCon USA's trademark in the sale, offer to sell, distribution, or advertising of goods without AcryliCon USA's authorization. To prove a claim for counterfeiting, AcryliCon USA must prove the following facts by a preponderance of the evidence:

- The trademark used by Silikal is a copy that is identical or substantially indistinguishable from AcryliCon USA's trademark that is registered on the Principal Register of the United States Patent and Trademark Office;

- Silikal's trademark was affixed without AcryliCon USA's permission; and

- Silikal used AcryliCon USA's trademark in the sale, offering for sale, distribution, or advertising of goods that are covered by AcryliCon USA's trademark registration.

**Authorities**

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 10.6.

**Silikal's Request No. 10.6.2:**
**Remedies**

[This instruction should be given if AcryliCon USA seeks actual damages and

Silikal's [revenues] ~~profits~~:

If you find that AcryliCon USA proved that Silikal engaged in counterfeiting

in violation of AcryliCon USA's trademark, you must consider whether, and to what

extent, money damages should be awarded.]

**Authorities**

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 10.6; ECF No. 99,

Order of May 14, 2015.

**Silikal's Request No. 10.6.3:**
**Plaintiff's Actual Monetary Damages**

You may award actual damages that AcryliCon USA has sustained. AcryliCon USA may recover the economic injury to its business proximately resulting from Silikal's wrongful acts. You are not required to calculate actual damages with absolute exactness—you may make reasonable approximations. However, an award of actual damages to AcryliCon USA must be just and reasonable, based on facts, and proved by AcryliCon USA by a preponderance of the evidence.

**Authorities**

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 10.6.

**Silikal's Request No. 10.6.4:**
**Defendant's [Revenues] ~~Profits~~ and Calculation of [Revenue] ~~Profits~~**

In addition to AcryliCon USA's actual damages, you may also make an award based on an accounting of Silikal's [revenues] ~~profits~~ if you find that:

- Silikal's conduct was willful and deliberate;

- Silikal was unjustly enriched; or

- An award of Silikal's [revenues] ~~profits~~ is necessary to deter Silikal's future conduct.

A defendant commits a "willful violation" of a trademark when that defendant knowingly and purposefully capitalized on and appropriated for itself the goodwill of a plaintiff.

"Unjust enrichment" occurs if Silikal received a benefit to which it was not entitled.

In determining Silikal's [revenues] ~~profits~~, AcryliCon USA is only required to prove Silikal's gross sales. Silikal may then prove the amount of sales made for reasons other than the infringement. ~~Silikal also may prove its costs or other deductions which it claims should be subtracted from the amount of its sales to determine its profits on such sales. Any costs or deductions that Silikal proves by a preponderance of the evidence are required to be subtracted from the sales~~

~~attributable to the infringement and the difference is the amount that may be awarded to AcryliCon USA.]~~

### Authorities

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 10.6; ECF No. 99, Order of May 14, 2015.

**Silikal's Request No. 10.8:**
**Trademarks – False Advertising**

AcryliCon USA claims that Silikal is liable for false advertising. To prove its claim, AcryliCon USA must prove the following facts by a preponderance of the evidence:

- Silikal's advertisements were false or misleading;

- Silikal's advertisements deceived, or had the capacity to deceive, consumers;

- The deception had a material effect on purchasing decisions;

- The misrepresentation affected interstate commerce; and

- AcryliCon USA has been, or is likely to be, injured as a result of the false advertising.

There are two ways in which Silikal's advertisement may be false or misleading: it may be literally false, or it may be literally true but misleading.

Additionally, AcryliCon USA must prove the materiality of Silikal's advertising by showing that Silikal's deception is likely to influence consumers' purchasing decisions.

**Authorities**

Eleventh Circuit Civil Pattern Jury Instructions (2013) § 10.8.

**Silikal's Request No. 10.9:**
**Trademark Reverse Passing Off**

To maintain a claim for reverse passing off, AcryliCon USA must prove that: (1) the item at issue originated with AcryliCon USA; (2) Silikal falsely designated the origin of the work; (3) the false designation was likely to cause consumer confusion; and (4) AcryliCon USA was harmed by Silikal's false designation. For an item to have originated with AcryliCon USA, AcryliCon USA must have actually manufactured it and not merely conceived of the idea for it. Silikal could have made a false designation of origin sufficient to support a reverse passing off claim only if it falsely represented the product's geographic origin or represented that Silikal manufactured the tangible product that was sold in the marketplace when it did not in fact do so.

**Authorities**

*Dastar Corp. v. Twentieth Cent. Fox Film Corp.*, 539 U.S. 23, 37 (2003); *Kehoe Component Sales Inc. v. Best Lighting Products, Inc.*, 796 F.3d 576, 587 (6th Cir. 2015), *reh'g denied* (Sept. 14, 2015); *Syngenta Seeds, Inc. v. Delta Cotton Co-op., Inc.*, 457 F.3d 1269, 1277-78 (Fed. Cir. 2006); *PHA Lighting Design, Inc. v. Kosheluk*, 1:08-CV-01208-JOF, 2010 WL 1328754, at *4 (N.D. Ga. Mar. 30, 2010); *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.,* 136 F. Supp. 2d  1271,

1284 (S.D. Fla. 2001) (citing *Softel, Inc. v. Dragon Med. and Sci. Commun., Inc.,*

118 F.3d 955, 970 (2d Cir. 1997)).

## FEDERAL UNFAIR COMPETITION

## (COUNT THREE)

**Silikal's Request No. 6.1:**
**Unfair Competition**

Public policy favors competition by all fair means and that encompasses the right to copy, except where copying is lawfully protected by a copyright or patent. One company's competition for the other company's business may be immoral or even unethical, but in the absence of a non-compete clause in the applicable contracts, it may not be illegal.

### Authorities

*Bonito Boats, Inc., v. Undercraft Boats, Inc.,* 489 U.S. 141 (1989); *Dippin' Dots, Inc., v. Frosty Bites Distribution, LLC,* 369 F.3d 1197 (11th Cir. 2004); *Epic Metals Corp. v. Souliere,* 99 F.3d 1034 (11th Cir. 1996).

## TRADEMARK AND UNFAIR COMPETITION – GEORGIA LAW

### (COUNT FOUR)

**Silikal's Request No. 7.1:**
**Punitive Damages**

If you find that Silikal infringed AcryliCon USA's trademark, then you must also determine whether Plaintiffs have proven by clear and convincing evidence that the infringing actions showed willful misconduct malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences, and if so, that Silikal acted with the further specific intent to cause harm to AcryliCon USA.

If you find that Silikal acted in any of these manners, you may award additional damages in an amount sufficient:

- to punish Silikal;

- to make an example of Silikal to others;

- to deter Silikal from future misconduct; or

- as an approximate award to AcryliCon USA of its expenses of litigation.

"Clear and convincing evidence" is evidence that produces in your mind a firm belief or conviction as to the matter at issue. Clear and convincing evidence involves a greater degree of persuasion than is necessary to meet the preponderance of the evidence standard. This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

**Authorities**

O.C.G.A. § 51-12-5.1; 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30.96 (2003); Kevin F. O'Malley, *et al.*, FEDERAL JURY PRACTICE & INSTRUCTIONS, Civil, § 104.02 (5th ed. 2000).

# TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION
## GEORGIA COMMON LAW

## (COUNT FIVE)

**Silikal's Request No. 8.1:**
**Unfair Competition**

Any attempt to encroach upon the business of a trader or other person by the use of similar trademarks, names, or devices, with the intention of deceiving and misleading the public, is a fraud for which equity will grant relief. In order to recover on the claim of unfair competition, AcryliCon USA must prove injuries suffered by it and the public from confusion resulting from Silikal's acts. Unfair competition is a question of fact. No inflexible rule can be laid down as to what conduct will constitute it. If Silikal, as a matter of fact, by its conduct is passing off its goods as AcryliCon USA's goods, or its business as AcryliCon USA's business, a case of unfair competition is made. The test is whether the public is likely to be deceived.

## Authorities

O.C.G.A. § 23-2-55; *Kay Jewelry Co. v. Kapiloff,* 204 Ga. 209, 215-16 (1948); *Atlanta Paper Co. v. Jacksonville Paper Co.*, 184 Ga. 205, 205, 212 (1937) [adapted].

**Silikal's Request No. 8.2:**
**Unfair Competition – Damages**

Where a party sues for damages arising from unfair competition, the remedies available to that party are the same as those for fraudulent use of a trademark and may include equitable and monetary damages.  A party that has been injured and damaged by a fraudulent use of its trademark, or by any unfair competition in trade, may sue for the damages that it has suffered as the result of such unlawful and unfair conduct.

**Authorities**

*Hagan & Dodd Co. v. Rigbers,* 1 Ga. App. 100, 57 S.E. 970, 971 (1907).

**GEORGIA UNIFORM DECEPTIVE OR UNFAIR
<u>TRADE PRACTICES ACT</u>**

**(COUNT SIX)**

**Silikal's Request No. 9.1:**
**Deceptive Trade Practices**

To find that Silikal violated the Georgia Deceptive or Unfair Trade Practices Act, you must find that Silikal engaged in a deceptive trade practice.

A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he:

- Passes off goods or services as those of another;

- Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;

- Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;

- Represents that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another; or

- Disparages the goods, services, or business of another by false or misleading representation of fact.

**Authorities**

O.C.G.A. §§ 10-1-372(a)(1), 10-1-372(a)(3), 10-1-372(a)(5), 10-1-372(a)(7),

10-1-372(a)(8).

**Silikal's Request No. 9.2:**
**Definition of a Good or Service**

A deceptive trade practice involves a good or service.

A "good" is anything (including a specially manufactured good) that is movable at the time of identification to the contract for sale. The money used to pay the contract price is not a good.

A "service" is the action of helping or doing work for another.

**Authorities**

O.C.G.A. § 11-2-105(1) (2015) [irrelevant goods, such as investment securities and animal young, deleted]; *In re Dillard Ford, Inc.*, 940 F.2d 1507, 1511 (11th Cir. 1991).

**Silikal's Request No. 9.3:**
**Future Injury**

Violation of the Deceptive and Unfair Trade Practices Act requires proof

that the plaintiff is likely to be injured in the future by the defendant's deceptive

trade practice.[4]

**Authorities**

*Vie v. Wachovia Bank, N.A.*, 1:11-CV-3620-RWS, 2012 WL 1156387, at *3

(N.D. Ga. Apr. 6, 2012) ("in the future"); *In re Johnston Industries, Inc.*, 300 B.R.

821, 826 (Bankr. M.D. Ga. 2003).

---

[4] "Proof of monetary damage, loss of profits, or intent to deceive is not required. Relief granted for the copying of an article shall be limited to the prevention of confusion or misunderstanding as to source." O.C.G.A. § 10-1-372(a) (2015).

## __BREACH OF CONTRACT__

## (COUNT SEVEN)

### Silikal's Request No. 11.1.2:
### Contract Damages

Damages are given as compensation for injury sustained.

Damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from the breach and such as the parties contemplated when the contract was made as the probable result of the breach.

### Authorities

Suggested Pattern Jury Instructions, Vol. 1 (Civil Cases) § 18.010; O.C.G.A. §§ 13-6-1, 13-6-2, 13-6-6, 13-6-7.

**Silikal's Request No. 11.1.2:**
**Contract Damages; Nominal Damages**

In every case of breach of contract, the party not breaching it has a right to damages. But, if there has been no actual damage, the plaintiff can recover nominal damages that will carry expenses of litigation.

**Authorities**

Suggested Pattern Jury Instructions, Vol. 1 (Civil Cases) § 18.012; O.C.G.A. §§ 13-6-6, 13-6-12.

**Silikal's Request No. 11.1.3:**
**Contract Damages; Attorneys' Fees (Expenses of Litigation); Generally**

The expenses of litigation are not generally allowed as a part of the damages. But, if the defendant has acted in bad faith or has been stubbornly litigious or has caused the plaintiff unnecessary trouble and expense, you may allow them. You should determine from the evidence the attorney's fees (or other expense), if any, as will be allowed.

**Authorities**

Suggested Pattern Jury Instructions, Vol. 1 (Civil Cases) 18.020; O.C.G.A. §13-6-11.

**Silikal's Request No. 11.1.4:**
**Contract Damages; Attorney's Fees (Expenses of Litigation); Exemplary**
**Damages**

Unless otherwise provided by law, exemplary damages can never be allowed in cases arising on contracts.

**Authorities**

Suggested Pattern Jury Instructions, Vol. 1 (Civil Cases) §18.022; O.C.G.A. §13-6-10.

**Silikal's Request No. 11.1.5:**
**Contract Damages; Remote or Consequential**

Remote or consequential damages are not allowed whenever they cannot be traced solely to the breach of the contract, unless they may be computed exactly, such as the [revenues] ~~profits~~ that are the immediate fruit of the contract and are independent of any collateral enterprises entered into in contemplation of the contract.

**Authorities**

Suggested Pattern Jury Instructions, Vol. 1 (Civil Cases) § 18.030; O.C.G.A. §13-6-8; ECF No. 99, Order of May 14, 2015.

**Silikal's Request No. 11.1.6:**
**Plaintiff's Duty to Lessen Contract Damages**

When by a breach of contract one is injured, one is bound to lessen the damages as far as is practicable by the use of ordinary care.

**Authorities**

Suggested Pattern Jury Instructions, Vol. 1 (Civil Cases) § 18.070; O.C.G.A. §13-6-5.

This 4th day of May 2017.

/s/ John Da Grosa Smith
John Da Grosa Smith
Georgia Bar No. 660946
jdsmith@smithlit.com

Kristina M. Jones
Georgia Bar No. 435145
kjones@smithlit.com

SMITH LLC
1320 Ellsworth Industrial Boulevard
Suite A1000
Atlanta, GA 30318
Telephone: (404) 605-9680
Telecopier: (404) 935-5226

F. R. Jenkins
*admitted pro hac vice*
jenkins@meridian361.com
Meridian 361 International Law Group,
PLLC
97A Exchange Street
Suite 202
Portland, Maine 04101
Telephone: (866) 338-7087
Telecopier: (202) 315-3894

*Counsel for Defendant Silikal GmbH*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

ACRYLICON USA, LLC,

     Plaintiff,

               v.

                                          No. 1:14-CV-01072-TWT

SILIKAL GMBH,

     Defendant.

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2017, a copy of the foregoing ***DEFENDANT SILIKAL GMBH'S JURY INSTRUCTIONS*** was filed electronically with the Clerk of Court using the CM/ECF system, which will automatically send notification of filing to all counsel of record who have consented to receive same.

                                    /s/ John Da Grosa Smith
                                    John Da Grosa Smith
                                    Georgia Bar No. 660946
                                    jdsmith@smithlit.com